[Civ. No. 2416.   Second Appellate District, Division One.—February 13, 1919.]

## NETTIE McGILLIVRAY, Respondent, v. R. L. HAMPTON, Administrator, etc., Appellant.

NEGLIGENCE — PERMITTING FIRE TO SPREAD — DESTRUCTION OF HAY— FINDINGS SUSTAINED BY EVIDENCE.—In this action to recover the value of hay destroyed by fire spreading from defendant's land, there was sufficient evidence to sustain the finding of the trial court that the defendant was guilty of negligence in permitting the fire to spread from his land to plaintiff's.

ID.—OFFER OF SETTLEMENT—ADMISSION.—Where a plaintiff, who claimed that he had been damaged by defendant's having permitted fire to spread from his land to plaintiff's and destroy hay thereon, wrote a letter to the defendant, before bringing action, saying he had heard that some thirty tons had been destroyed and asking, "Will you please make good the loss to me?" this did not amount to an admission that only thirty tons had been burned.

ID.—DAMAGE, HOW COMPUTED.—In computing the damages in such case, the court properly based its estimate on the acreage involved and the estimates of witnesses as to the yield per acre.

ID.—VALUE OF HAY—FINDING NOT SUSTAINED BY EVIDENCE.—The finding of the trial court that the value of the hay destroyed was $8 a ton is not supported by the evidence, none of the witnesses having placed the value higher than $8 a ton for baled hay and the cost of baling having been shown to be $1.75 a ton.

APPEAL from a judgment of the Superior Court of Riverside County. George H. Cabaniss, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

Walter S. Clayson for Appellant.

Charles H. Seccombe for Respondent.

JAMES, J.—In this action a recovery was allowed to the plaintiff for the value of forty-five tons of hay at $8 per ton. Defendant has appealed.

The hay was destroyed by fire, which, starting on the land of the defendant, spread into the hayfields of the plaintiff. It is claimed that the defendant negligently allowed the fire, which had started on his land, to extend to the lands of the plaintiff. It is the contention of appellant that the evidence was insufficient to justify the conclusion of the trial judge that negligence was shown as against the defendant. The further points are made that the finding of the court that forty-five tons of hay was destroyed, and that it was of the value of $8 per ton, are not sustained by the evidence, appellant asserting that but thirty tons of hay was shown to have been destroyed and that the reasonable market value was not shown to be greater than $6 per ton. The appeal being by the alternative method, we are left to such quotations as are made in the briefs to determine what the evi-

dence was. It appears that the defendant was not present on his lands at the time the fire was discovered, but his foreman was there. How the fire was started is not shown. Under the provisions of section 3344 of the Political Code, a person is liable not only where he negligently sets out fire on his own ground, but also for "negligently suffering any fire to extend beyond his own land." When the foreman of the defendant discovered the fire burning, he, with the assistance of several persons, proceeded to attempt to put it out along the line where the land of defendant bordered that of the plaintiff. One witness testified that the men fighting the fire "apparently put it out—it seemed to be out of fuel." McCoy, the foreman, testified: "We put it out, we thought we had put it out, and watched it there until almost 12 o'clock, when we left for dinner. And we went on to dinner and it was still burning over to the west and north— and the only place we thought there was any danger of its getting out was on the east, because there was roads on the west and plowed land on the north." Another witness testified that when the men left for lunch "the fire was smoldering along the east line where they put it out. There was no blaze apparently at the time"; that it was smoking. The further fact appears that after the men had had their lunch and returned to the ground, the wind had shifted to the west and the fire was then on the land of the plaintiff. Notwithstanding further efforts of the men to control the fire, it destroyed the hay of the plaintiff. There was no testimony shown from which it can be gathered that the wind which was blowing was of an unusual kind. The land of the defendant was westerly of that of the plaintiff, and hence it can be seen that a westerly wind would blow from the land of the defendant toward the land of the plaintiff. Undoubtedly this wind fanned into a blaze the smoldering fire which the witness testified was left along the east line of defendant's land, and carried it across the line. This evidence, appellant insists, fails to show any negligence on the part of defendant. This position could be taken with more assurance if it did not appear, as we have noted, that when the foreman of the defendant left the ground for lunch the fire was still smoldering along the line of the plaintiff's property. Such being the case, we think that the matter of determining whether defendant by his servants discharged

the obligation of using ordinary care to extinguish the fire
was one resting in the judgment of the trial court, and that
it must be said that there is some evidence to sustain the
conclusion arrived at. While the foreman did testify that
the fire was apparently out, it at once appears as a reason-
able deduction from the testimony of the other witness who
saw the fire smoldering that the foreman was not diligent
in making his observation to determine whether the fire was
in fact extinguished before he left the field. The finding
that the defendant was negligent must be sustained.

The court calculated the amount of hay, for the burning
of which damages were awarded, by taking the amount of
acreage involved and the estimates of witnesses as to the
amount of the yield per acre. Appellant insists that the
court was not justified in doing this, because the plaintiff, in
a letter to the defendant prior to the suit, had claimed only
that thirty tons were burned, instead of forty-five. This
letter was a letter written for the purpose of securing an
amicable settlement, but it did not definitely state that only
thirty tons of hay was burned. The letter was, in part, as
follows: "I hear at same time their fire burned and utterly
destroyed some over thirty tons of my hay. I depended on
it to sell, and had been offered $8 per ton. Will you
please make the loss good to me." This letter did not
amount to an admission that only thirty tons of hay had been
burned, and the court was authorized to determine the fact
as to that matter as the evidence showed it. The method
adopted by the judge in computing the total tonnage de-
stroyed was not objectionable.

As to the finding of the court that the hay destroyed had
a market value of $8 per ton, we have searched the record
in vain to find evidence to support it. None of the testimony
placed the value at a greater sum than $8 for baled hay, one
witness stating that it was worth "$8 or $9." The cost of
baling was proved to be $1.75 per ton. The price of $8
per ton as fixed by the trial judge for unbaled, loose hay is
not supported by a word of testimony. We were much
puzzled to understand how the court could have arrived at
the figure stated in its findings as the ton price of hay until
we read in the transcript a statement of the remarks of the
judge in summing up his conclusions; and after we had read
that statement we were more surprised than puzzled. We

quote the dialogue between the court and counsel: "Mr. Clayson: You are establishing the value of $8 for unbaled hay? The Court: I think so. Of course when a witness testifies as a matter of opinion, he is giving himself more leeway than when he testifies to a fact. He is simply giving his opinion, and when he testifies there is a little bias in favor of the side that calls the witness, and that is invariably noted by the courts in hearing the testimony of such witnesses. Of course this is not a part of the record, but hay has been very high in this country for two or three years, hasn't it? Any hay would command a pretty good price. Is that true? I think $8 is probably—the lady puts the value at how much? Mrs. McGillivray: I was offered $18. The Court: Eight dollars will do for the time being until I am reversed by a higher court." The statement of Mrs. McGillivray, volunteered in answer to the court's question, referred to no particular time, but her testimony given earlier in the trial showed that the only offer of a higher price than $8 for baled hay received by plaintiff was after the fire occurred—how long does not appear. We regret exceedingly in this case to be compelled to verify the prophecy of the trial judge by ordering a reversal of the judgment, especially for the reason that the amount involved is small and much delay has been occasioned by the protracted course of this litigation over a few tons of hay. If we were authorized to modify the judgment, we would adopt that course; but the error complained of goes to a finding of fact which we have not the power to revise.

The judgment appealed from is reversed.

Conrey, P. J., and Shaw, J., concurred.