[Civ. No. 2989. Third Appellate District.—November 24, 1925.]

ANTONIO PAIVA et al., Appellants, v. THE CALIFORNIA DOOR COMPANY (a Corporation), Respondent.

[1] NEGLIGENCE—SETTING OF FIRE—ACTION FOR DAMAGES—EVIDENCE— INFERENCE BASED ON INFERENCE.—In this action to recover damages alleged to have been caused by fire negligently kindled by defendant on its lands and by it negligently, wilfully, and carelessly permitted to spread to and upon plaintiff's land and burn and destroy a large amount of plaintiff's standing timber, pasturage, fence posts, and wire, taking it as a justifiable inference that a certain stump on defendant's land was burning on the morning of the fire and giving consideration to the proved fact that a strong wind was blowing past the stump in the direction of the place where the fire started, it would not have been unreasonable, in the absence of other explanation, to infer that the

fire was caused by sparks from the burning stump; and this latter inference, although based in part upon the former inference, would have been legally permissible.

[2] ID.—EVIDENCE—NONSUIT—APPEAL.—In such action, the evidence produced at the trial, viewed in the light most favorable to plaintiff, as is required on appeal from a judgment of nonsuit, was sufficient to prove a *prima facie* case in favor of plaintiff.

[3] ID.—UNGUARDED FIRE—ANTICIPATION OF WIND.—In such an action, it cannot be said as a matter of law that it is not negligence to leave burning stumps unguarded during the dry season in close proximity to lands covered by trees, brush, leaves, and grass, as it is reasonably to be anticipated that a wind may carry sparks from the burning stump to the inflammable materials on the adjacent lands.

[4] ID.—FORESTRY ACT—POLICE POWERS—VALID LEGISLATION—PRIMA FACIE PROOF.—While it may be beyond the power of the legislature to impose liability for an accidental and unavoidable fire which accidentally and unavoidably escapes if there be no negligence in causing the fire or in allowing it to escape, it is within the power of the legislature to provide, as it has provided in section 14 of the Forestry Act (Stats. 1905, p. 235), that proof that a defendant allowed fire to escape from his own land to that of another shall be *prima facie* proof of negligence.

[5] ID.—TITLE OF FORESTRY ACT — INVALID PROVISIONS — REASONABLE LEGISLATION.—In so far as the provisions of the Forestry Act are broad enough to apply to fires in places other than within public or private forests or in places so situated in relation thereto as to endanger the same, such provisions are invalid, because not germane to the title. Such provisions are not to be held void *in toto*, however, but are to be construed as applying only to the subject matter embraced in the title of the act; and viewing said act in the light of the limitations contained in section 16 thereof, and in the title, it cannot be said that the legislature has transgressed reasonable bounds.

[6] ID.—INVALIDITY OF FORESTRY ACT—RECOVERY UNDER OTHER STATUTES.—In this action to recover damages alleged to have been caused by fire negligently kindled by defendant on its lands and by it negligently, wilfully, and carelessly permitted to spread to and upon plaintiff's land and burn and destroy a large amount of plaintiff's standing timber, pasturage, fence posts, and wire, even though the Forestry Act were held invalid on the ground that the legislature had transgressed all reasonable bounds, defendant

3. See 11 R. C. L. 947.
6. See 12 Cal. Jur. 524; 11 R. C. L. 941.

would still have been liable, under section 3344 of the Political Code and section 3346a of the Civil Code, if it had negligently permitted the fire to escape beyond its own land.

(1) 4 **C. J.**, p. 763, n. 59, p. 764, n. 66; 23 **C. J.**, p. 48, n. 44, p. 54, n. 16, p. 55, n. 18, 23.  (2) 4 **C. J.**, p. 764, n. 61.  (3) 29 Cyc., p. 636, n. 75.  (4) 12 **C. J.**, p. 1233, n. 84; 29 Cyc., p. 595, n. 18; 36 Cyc., p. 976, n. 27.  (5) 36 Cyc., p. 1033, n. 47, p. 1046, n. 8.  (6) 29 Cyc., p. 461, n. 67, 69, 70, 71.

APPEAL from a judgment of the Superior Court of Eldorado County. George H. Thompson, Judge. Reversed.

The facts are stated in the opinion of the court.

J. M. Inman and P. G. West for Appellants.

R. Fitzgerald and Charles A. Swisler for Respondent.

FINCH, P. J.—Plaintiff sued to recover damages alleged to have been caused by fire "negligently kindled" by defendant on its land and by it "negligently, wilfully and carelessly" permitted to spread to and upon plaintiff's land and "burn and destroy a large amount of plaintiff's standing timber, pasturage, fence posts and wire." At the close of plaintiff's evidence, on motion of defendant, judgment of nonsuit was entered on the ground that the plaintiff had failed to prove a sufficient case to support a judgment in his favor. This appeal is from the judgment. Since, on a motion for a nonsuit, all the evidence in favor of the plaintiff must be taken as true and all contradictory evidence disregarded, it will be sufficient to state the evidence most favorable to plaintiff's case which tends to support the allegations of the complaint.

Running in a direction approximately west-southwest through defendant's timber land, there is a ravine which crosses the west boundary line about sixty or seventy feet south of the place where the fire in question was discovered. For a week or more prior to the day of the fire the employees of defendant were engaged in clearing its land lying adjacent to the west boundary line thereof, both on the north and the south sides of the ravine, and burning brush and limbs of trees thereon. The evidence justifies

respondent's statement that the ravine "had been cleared of all brush, as also had the land of respondent lying to the north of the ravine, and some clearing had also been done south of the ravine." An employee of defendant testified that its land across the line from the place where the fire started "was all burned off slick that I could see." Except for the standing timber it "was all clear." The defendant had cleared a fire line, or fire trail, along the west boundary from nine to eighteen inches in width.

During the latter part of the week preceding the fire some of defendant's employees were engaged in burning brush south of the ravine. Witnesses observed fire burning on defendant's property in the bottom of the ravine near the west boundary line in the forenoon of Saturday, September 15, 1923. The employees, in accordance with their usual custom, quit work for the week at 3 o'clock in the afternoon of that day. Between 7 and 8 o'clock Saturday night a fire broke out on defendant's land south of the ravine near the place where the men had been burning brush. "It was just in a little brush and manzanita, . . . a small patch of stuff, it started up in that. . . . There had been little piles of brush burned around there in places : . . where they had been burned a few days before." Three men fought this fire. It burned for "an hour or hour and half." On Sunday night, at about 10 o'clock, another fire was discovered near the same place. It burned over a larger area than that of Saturday night, and fifteen or twenty men were called out to fight it, some of them remaining on duty there until nearly 7 o'clock Monday morning, when only a few stumps were burning. These burning stumps were covered with earth before the men left them.

On Monday, September 17th, a dry wind was blowing from the northeast. "It was more nearly east than northeast." "It blew in a circle. It would come this way in a circle and then go the other way, . . . from all directions, that is the way it blew." It was a "pretty high wind, about forty miles an hour." A witness testified that from defendant's property toward the place where the fire started, there were "some leaves flying and some ashes where some fire was before. . . . On that place where the wind blew the ashes, there wasn't any fire for six days."

Two of defendant's employees were felling trees in the morning of that day at a point eighty or ninety feet northerly from the place where the fire started and twenty-five or thirty feet east of defendant's west boundary line. They had an unobstructed view of the defendant's land lying to the south of them and of the place where the fire started, but on that morning they did not see any other person in that vicinity or any fire on defendant's land. At about a quarter-past 7 o'clock they noticed a fire in "pine needles and manzanita leaves . . . underneath a manzanita bush" about eight feet west of defendant's boundary line and, as stated, about sixty or seventy feet north of the ravine. The fire was then about fourteen inches high and covered "a space of four or five feet." They immediately ran to the fire and endeavored to extinguish it and other employees went to their assistance within a few minutes thereafter. In spite of the combined efforts of these men, the fire spread rapidly and swept westerly and southwesterly over several thousand acres of land, including that of plaintiff.

Appellant contends that the defendant negligently left smouldering fires in two stumps north of the ravine and near the west boundary line of its land and that the evidence warrants the inference that fire was communicated from one of these stumps to the inflammable pine needles and leaves covering the land where the fire was discovered. There is no direct evidence that either of these stumps was burning on Monday morning. If they were burning at that time, in the absence of any other evidence as to the origin of the fire, it might be inferred reasonably that the high wind carried sparks or pieces of burning material from one of the stumps to the place where the fire started. The evidence tending to show that there was fire in these respective stumps will be stated separately.

Euell Gray, an assistant fish and game commissioner, visited the premises in the afternoon of September 20th. He testified as follows: "Q. Do you know where the . . . big fire started? A. Yes. Q. That was pointed out to you? A. Yes. Q. Well, with reference to that point where did you see any fire burning? A. There was a pitch stump at that point that was very close to the fire line . . . that was still burning. . . . It was a pitch pine

stump. . . . It was practically right there. It showed that some effort had been made at that point to corral the fire . . . and it had apparently gotten away because of the closeness of timber and leaves, etc. . . . It was right there at the point of the fire line. They had scraped the leaves and debris away. . . . It had burned practically through the heart of the stump. It had apparently gone through the stump and had burned underneath, under the ground. The fire was still in the roots of the stump. Q. Was it sticking above the ground? A. Yes. . . . This pitch stump was right in the fire line they had put along the edge of their boundary. . . . It seemed to us at that time that it had started from that pitch pine stump. . . . It showed that from the amount of work that had been done, scraping the leaves in and trying to corral it at that place. . . . You could see where they had put some dirt on the stump. . . . They had apparently tried to cover this stump with dirt and had brought the fire line between the stump and the manzanita bush or the brush on the westerly side. . . . At the time we examined it it looked as though the fire had apparently gone from this stump. You could see where it crossed the fire line and had got in where there was lots of leaves and pine needles. . . . You could see where the needles had burned from the stump across into the manzanita bush where they first tried to corral the fire." Cross-examination by counsel for defendant: "Q. How far would you say this stump was from . . . where the fire is supposed to have started? A. . . . I would say that it was not more than seven or eight feet. . . . Q. . . . Would you say that it was possible for embers from burning bushes and branches of that (manzanita) tree to have fallen and ignited the needles on the ground and in that way connected with the stump? A. That is highly improbable on account of the wind and the distance too. Had the wind been blowing in an opposite direction I would say the fire might have come back. Q. You have had considerable experience with fires, have you not? A. Quite a little, yes. Q. In every fire that starts it eats back towards the way the wind is blowing for some distance, does it not? A. But not in this case. It had burned to this particular point and there was nothing for it to eat back on. Q. But there was a point where it

could eat into it from the other side was there, from the side you saw the ashes? A. Well, that portion had been burned. The brush had all been burned. Q. In fact it had all been cleared for some time before that, didn't it have that appearance? A. It did at this time, yes." Another witness testified: "The fire trail was just west of the stump. There was a thin sprinkling of pine needles in the fire trail that had been burned following directly from the stump to where the thick needles and debris was under the manzanita bush. Q. Were there any evidences as to how this stump had been made—in other words, had it been cut off or was it an old stump or what? A. It was all charred over the top and burned down to a small size, I could not say." An employee of defendant who "had charge of burning brush," testified that there were no "fires made or kindled" on defendant's land on the 17th of September. It does not appear whether any fires were kindled on defendant's property on the 18th or the 19th.

The testimony relative to the other burning stump is more closely connected in point of time with the fire of the 17th. J. P. Yost, employed by the state board of forestry as a district fire ranger, testified as follows relative to an examination which he made of defendant's premises on the day after the fire: "I went up Tuesday morning and went into the bottom of the ravine there on the line they have been calling the fire line. . . . I started east along there and after I got up the ravine about seventy-five feet I went straight north to get out of the ravine and I put my hand up on a round place. It was a stump covered up and I found it was hot there, and I went to jump up and I landed on a bed of coals and I found that the stump had burned part way through. . . . There was a bed of hot coals one side of the stump. A jagged end stuck up maybe a foot. The root gave way underneath where it had been burned maybe a foot down in the ground. After I found that I went up and looked over all the property. . . . On the southeast point of the clear ground . . . there was three different stumps burning. . . . Q. With reference to the place where you stepped into the hole, where was that with reference to the California Door Company's line? A. About seventy-five or one hundred feet up the ravine. Q. Where was it with reference to this point which you

say you had pointed out to you as the place where the fire started? A. It was east, maybe a little bit southeast—south of a point straight east, maybe ten or fifteen feet south of it." **[1]** From the extent to which this stump had been burned it is evident that it must have commenced to burn at a time prior to September 18th. Since no fires were kindled on defendant's premises on the 17th, it logically follows that it must have been burning on the morning of that day and prior thereto. Taking it, then, as a justifiable inference that the stump was burning on Monday morning and giving consideration to the further proved fact that a strong wind was blowing past the stump in the general direction of the place where the fire started, it would not be unreasonable, in the absence of other explanation, to infer that the fire was caused by sparks from the burning stump. (*Viera* v. *Atchison etc. Ry. Co.,* 10 Cal. App. 267 [101 Pac. 690]; *Bowles* v. *Hickson,* 22 Cal. App. 264 [133 Pac. 1149]; *St. Paul F. etc. Co.* v. *Southern Pac. Co.,* 30 Cal. App. 140 [157 Pac. 247]; *Reuter* v. *San Pedro etc. R. R. Co,* 37 Cal. App. 277 [147 Pac. 927]; *McGillvray* v. *Hampton,* 39 Cal. App. 726 [179 Pac. 733]; *Dibble* v. *San Joaquin L. & P. Corp.,* 47 Cal. App. 112 [190 Pac. 198].)

Respondent contends that the foregoing reasoning is faulty in that "an inference cannot be based on another inference." The second inference is not based upon the first inference alone, but upon the inferred fact that the stump was burning and the further fact, proved by direct evidence, that a strong wind was blowing from the stump toward the origin of the fire. The statement that an inference cannot be based upon another inference appears itself to be based upon an unsubstantial foundation. "An inference is a deduction which the reason of the jury makes from the facts proved, without an express direction of law to that effect." (Code Civ. Proc., sec. 1958.) "An inference must be founded on a fact legally proved." (Code Civ. Proc., sec. 1960.) Facts established by circumstantial evidence are "proved" and "legally proved," and the foregoing sections do not provide that the facts upon which an inference may be founded must be proved by direct evidence. To hold that an inference cannot be based upon facts inferred from testimonial evidence would be

to confine circumstantial evidence within narrow limits. In Wigmore on Evidence, section 41, it is said: "It was once suggested that an 'inference upon an inference' will not be permitted, i. e., that a fact desired to be used circumstantially must itself be established by testimonial evidence; and this suggestion has been repeated by a few, courts, and sometimes actually enforced. There is no such rule; nor can be. If there were, hardly a single trial could be adequately prosecuted. . . . In . . . innumerable daily instances we build up inference upon inference, and yet no court ever thought of forbidding it. . . . The judicial utterances that sanction the fallacious and impracticable limitation, originally put forward without authority, must be taken as valid only for the particular evidentiary facts therein ruled upon."

[2] It is not intended, of course, to express any opinion as to the weight of the evidence produced at the trial, but, viewing the evidence in the light most favorable to the plaintiff, as is required on a motion for a nonsuit, sufficient appears to prove a *prima facie* case in favor of plaintiff. [3] It cannot be said as a matter of law that it is not negligence to leave burning stumps unguarded during the dry season in close proximity to lands covered with trees, brush, leaves, and grass. It is reasonably to be anticipated that a wind may carry sparks from the burning stump to the inflammable materials on the adjacent lands.

The fires which had been burning upon defendant's land were set without a permit from the state forester or any of his agents, required by the Forestry Act. (Stats. 1905, p. 235.) That act provides:

"§ 14. Every person who willfully, maliciously or negligently sets on fire or causes or procures to be set on fire any woods, brush, prairies, grass, grain or stubble on any lands not his own, or allows the fire to escape from his own land, whereby any property of another is injured or destroyed, . . . shall be guilty of a misdemeanor. . . . Setting such fires or allowing them to escape shall be *prima facie* proof of willfullness, malice or neglect under this section, provided, that nothing herein contained shall apply to a person who, in good faith, sets a back-fire to check a fire already burning."

"§ 16. Restriction of use of fire in dry season. It shall be unlawful between May fifteenth and October thirty-first, for any person or persons to burn brush, stumps, logs, fallen timber, fallows, slash, or grass brush or forest covered land or any other inflammable material or to blast with dynamite, powder or other explosives, or set off fireworks of any kind in forest, fallows, grass or brush covered land, either their own or the property of another, unless done under a written permit from the state forester or his duly authorized agent, and in strict accordance with the terms of the permit; these restrictions not to apply to the ordinary use of fire or blasts in logging in the redwood region (sequoia sempervirens). Provided, however, that no written permission shall be necessary to burn inflammable material in small heaps or piles, where the fire is set on a public road, in door yard premises, corrals, gardens, or plowed fields, at a distance not less than one hundred feet from any woodland, timber, or brush covered land or field containing dry grass or other inflammable material. Any violation of this section is punishable by a fine of not less than fifty dollars or more than five hundred dollars or imprisonment for not less than thirty days nor more than six months in the county jail of the county in which the crime is committed, or both such fine and imprisonment." (Stats. 1923, p. 690.)

"§ 18. Civil liability for forest fires. In addition to the penalties provided in sections fourteen, fifteen, sixteen and seventeen of this act, the United States, state, county, or private owners, whose property is injured or destroyed by such fires may recover in a civil action, double the amount of damages suffered if the fires occurred through willfulness, malice or negligence; but if such fires were caused or escaped accidentally or unavoidably, civil action shall lie only for the actual damage sustained as determined by the value of the property injured or destroyed, and the detriment to the land and vegetation thereof. The presumption of willfulness, malice or neglect shall be overcome; provided, that the precautions set forth are observed; or, provided, fires are set during the 'dry season' with written permission of and under the direction of the district firewarden. Persons or corporations causing fires by violations of this act shall be liable to the United States, state,

county, or private owners in action for debt to the full
amount of all expenses incurred by the United States,
state, county or private owners in fighting such fires.''
(Stats. 1919, p. 234.)

Respondent contends that section 18 ''provides for a
civil liability in cases where a fire is caused or escapes ac-
cidentally or unavoidably,'' and that such provision is
therefore unconstitutional, in that it would deprive a per-
son of property without due process of law. **[4]** It may
be conceded that, in a case such as this, it is beyond the
power of the legislature to impose a liability for an acci-
dental and unavoidable fire which accidentally and un-
avoidably escapes, if there be no negligence in causing the
fire or in allowing it to escape. The provision referred to,
however, may be eliminated without affecting the other
provisions of the statute. It is within the power of the
legislature to provide, as it has provided in section 14, that
proof that a defendant allowed fire to escape from his own
land to that of another shall be *prima facie* proof of negli-
gence. (*People* v. *Cockrill,* 62 Cal. App. 22 [216 Pac.
78].)

Respondent further contends that, for like reasons, sec-
tion 16 is unconstitutional, citing *In re McCapes,* 157 Cal.
26 [106 Pac. 229]. In that case subdivision 3 of section
384 of the Penal Code, as it then stood (Stats. 1907,
p. 996), was declared unconstitutional. It made it a mis-
demeanor for any person to build a fire upon his own land
''for the purpose of burning brush, stumps, logs, rubbish,
fallen timber, fallows, grass or any other thing whatso-
ever'' without a written permit from a ''state or district
fire warden.'' The court said: ''It prevents the setting
of any fire without permission from a fire warden, though
the fire be set with scrupulous care, and by no possibility
could work the destruction of property.'' The court fur-
ther said: ''It is to be noted that the act is designed to
prevent the destruction of property, and particularly of
forests, by the careless setting of fires. In its purview and
purpose, therefore, the act is within the police power of
the state. No one at this day can be unaware of the great
havoc wrought by forest fires, and, indeed, in states such
as this, which undergo long periods of drouth, of the loss
which results from fires sweeping over the farming

lands and destroying the crops. The purpose of the law being for the general good of the state, to prevent the destruction of property by fires carelessly set and allowed to escape control, not only brings the act strictly within the police power, but the purpose must commend the act to every court. Nevertheless, in the accomplishment of that purpose, it is quite plain that the legislature has transgressed all reasonable bounds."

[5] The purpose of the Forestry Act, as expressed in the title thereof, is "to provide for the regulation of fires on, and the protection and management of, public and private forest lands within the state of California." The language of the act, however broad and general its terms, is restrained and qualified by this title to fires within public or private forests or in places so situated in relation thereto as to endanger the same. (Lewis' Sutherland on Statutory Construction, 2d ed., sec. 135.) In so far as the provisions of the act are broad enough to apply to fires in other places, such provisions are invalid, because not germane to the title. Such provisions are not to be held void *in toto,* however, but they are to be construed as applying only to the subject matter embraced in the title of the act. (Lewis' Sutherland on Statutory Construction, 2d ed., sec. 298; *Estate of Melone,* 141 Cal. 331 [74 Pac. 991].) The application of the provisions of the Forestry Act is expressly limited by the proviso contained in section 16 thereof, a limitation not contained in section 384 of the Penal Code at the time of the decision in the McCapes case. Viewing the statute in the light of these limitations, it cannot be said that "the legislature has transgressed all reasonable bounds."

[6] If the act in question were invalid for the reasons stated by respondent, it would still be liable if it negligently permitted the fire to escape. Section 3346a of the Civil Code and section 3344 of the Political Code, in identical language, provide: "Every person negligently setting fire to his own woods, or negligently suffering any fire to extend beyond his own land, is liable in treble damages to the party injured."

The judgment is reversed.

Hart, J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 24, 1925, and, a petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 21, 1926.