[Civ. No. 3264.   Third Appellate District.—June 4, 1927.]

## W. S. YOUNG, Respondent, v. SAN JOAQUIN LIGHT & POWER CORPORATION, Appellant.

[1] APPEAL—MINOR OBJECTIONS.—Minor objections of a trivial nature, which do not affect the substantial rights of the parties, will not be considered on appeal.

[2] NEGLIGENCE—LOSS BY FIRE—DAMAGES—EVIDENCE—FINDINGS.—In an action for damages for losses sustained by reason of a fire resulting from the alleged negligence of defendant's employees, evidence as to whether the employees negligently left fire within ten or twelve feet of inflammable material on plaintiff's adjoining property, when the wind was blowing from the fire toward plaintiff's property, in such condition as was calculated to carry fire to such material, and whether the fire was caused thereby, presented a question of fact for the trial court.

[3] ID.—MAINTENANCE OF FIRE NEAR COMBUSTIBLE MATERIAL—CARE—INFERENCES—EVIDENCE.—Maintenance of a fire in close proximity to combustible material during the dry season of the year, and when the wind is favorable for causing burning embers to be carried to near-by combustible material, may be reasonably held to be negligence, although under other circumstances it might be ordinary care; and in this action for negligence, the trial court was justified in drawing the inference from the evidence that defendant's employees were negligent in not seeing that the fire was entirely extinguished before leaving the premises.

[4] APPEAL—INFERENCES OF FACT.—If inferences of fact, drawn from the evidence by the trial court, are reasonable, they cannot be disturbed on appeal.

(1) 4 C. J., p. 1167, n. 95.    (2) 29 Cyc., p. 636, n. 76.    (3) 29 Cyc., p. 461, n. 71.    (4) 4 C. J., p. 881, n. 9.

APPEAL from a judgment of the Superior Court of Tulare County. J. A. Allen, Judge. Affirmed.

The facts are stated in the opinion of the court.

F. H. Pearson for Appellant.

W. J. Minville and Gallaher, Simpson & Hays for Respondent.

PLUMMER, J.—The plaintiff had judgment in an action brought to recover losses sustained by reason of a fire resulting from the alleged negligence of the defendant's employees and the defendant appeals.

The record shows that on the twenty-fifth day of August, 1923, and for some time preceding, the plaintiff owned and occupied a certain lot of land in the city of Dinuba, county of Tulare, state of California, on the front of which was situated his residence and on the rear of which was located certain machinery, buildings, etc., known and called the Alta Soda Works. The tract of land just referred to extended in a westerly and easterly direction; immediately to the north of the lot of land just referred to was a certain other

---

3. Negligence in setting fire on one's own premises as affected by weather conditions, note, 20 Ann. Cas. 699. See, also, 11 R. C. L. 994, 995.

lot occupied by the defendant and used by the defendant as a storage yard. This lot was so occupied by the defendant under a lease from the plaintiff. The two lots referred to faced upon a street, and along the rear thereof existed an alleyway. The lot occupied by the appellant, as just stated, was used for storage purposes in its business as a public utility. A roadway or driveway extended from the rear to the front of the lot occupied by the appellant, the lot itself being completely inclosed by a woven wire fence seven feet in height. A gate was maintained both at the front and the rear of said lot. The driveway just referred to extended over said lot practically along the center line thereof. The material on the lot occupied by the defendant was piled up along the south side thereof adjoining the buildings in which the plaintiff conducted his soda works, the material consisting of cross-arms, crates, barrels, boxes, excelsior, and other wooden articles intended to be disposed of or used for fuel purposes. On the day in question certain employees of the defendant were engaged in burning the insulation off of a quantity of copper wire. This fire was kindled and maintained in the roadway just mentioned a few feet north of the pile of material to which we have referred.

The record shows that some two tons of copper wire were handled by the employees of the defendant on the day in question and the insulation burned therefrom; that the coils of wire from which the insulation was burned was allowed to remain in the place where the fire had been kindled and maintained. It would appear from the testimony that two fires were kindled and maintained and used in the burning of insulation from copper wire as just stated. This process continued from some time in the forenoon until approximately 1:30 in the afternoon. The time when the defendant's employees ceased the operations referred to appears to be only approximately stated, but the conclusion is reasonable that the operation ceased at about the time stated. The record shows that the last time any of the employees of the defendant were upon the premises mentioned was in the neighborhood of 2 o'clock. A short time after the defendant's employees had left the premises, to wit, about 3 o'clock, a fire was discovered in the pile of material to which we have heretofore referred, which fire was communicated to the

plaintiff's soda works and the building in which the soda works were maintained were completely destroyed and the machinery more or less damaged.

Upon this appeal it is urged that the testimony is insufficient to justify the findings of the court that the fire resulted from the negligence of the defendant's employees. [1] Some minor objections are also urged, but as they are only trivial in their nature and do not affect the substantial rights of the parties, they will not be considered in this appeal. The action was tried before the court sitting without a jury and the opinion filed by the court in deciding the action is so clear and distinct, and so accurately portrays the situation revealed by the record, that we will take therefrom the following excerpts:

"The defendant occupied and used the lot just north of plaintiff's property. On this lot and piled along and against a woven-wire fence which separated defendant's lot from plaintiff's, defendant had piled a lot of material consisting of crates, excelsior, barrels, cross-arms and other material. This pile was, on the day of the fire, placed along the fence for 15 or 20 feet, being either piled against or very close to the little building used as a storeroom by plaintiff, the pile of material was as high as the fence, seven feet, and was about ten feet in width.

"Some time during the forenoon of the day of the fire several of the employees of the defendant came to the lot occupied by defendant and there proceeded to burn the insulation off of several tons of copper wire. A driveway extended from east to west, lengthwise through the lot and at about the center line running east and west. To burn this insulation the employees built two fires in the driveway. Each fire was 10 or 12 feet north of the pile of material or rubbish. One of the fires was about 15 feet from the storeroom building and the other about 25 feet. The insulation was burned by placing the copper wire on the fire. All the wire from which the insulation was burned was left in a pile on the place of the fire. The burning of the insulation continued until noon and then, with a short intermission, until some time in the afternoon, but ending before 2 p. m.

"It cannot be said positively that the fire kindled by defendant's employees, and by them left smouldering, set fire

to the rubbish in defendant's lot, for no one actually saw how the fire caught in the pile of rubbish. But there was no other fire near the rubbish except the fires kindled by defendant's agents. No persons were on the lot except defendant's employees. The lot was inclosed with a seven-foot woven-wire fence. The gate at each end of the lot was kept locked when defendant's employees were absent therefrom. The fire they kindled was seen to be still burning as late as 2:30 p. m. It was within 10 feet of the pile of inflammable material, and the wind was blowing from the fire toward the material. It must therefore be held that the fire which caught the rubbish came or spread from the fire kindled by defendant's agents.

"The evidence established that defendant's employees were negligent. The burning of the insulation from the wire was in the course of their employment for defendant, and defendant is, therefore, liable for damages which arose from their negligence. The fire occurred at the dryest season of the year. A wind was blowing from the north toward the pile of rubbish. It is a matter of common knowledge that in this valley the prevailing wind in the summer season is from the northwest, and that it is generally of strength sufficient to carry sparks quite a distance. Yet the defendant's employees left a smouldering fire within 10 feet of an inflammable pile of rubbish which defendant had piled against or almost against a frame building occupied by plaintiff. Ordinary care required that defendant's employees see that the fire was entirely out at the time they left the premises. They knew that the fire was within 10 feet of a large pile of inflammable rubbish, and that the wind might carry sparks from the fire to the rubbish."

There is also testimony in the record that the fire was still burning at about 2:30 P. M., being about thirty minutes after the last of the defendant's employees had visited the premises. There is also testimony that some of the defendant's employees who visited the place about 2 o'clock saw heat waves coming from the place of the fire and felt heat, as they passed by the place or places where the fire had been maintained. The testimony further states that shortly after 3 o'clock the pile of material in the defendant's lot was seen to be on fire. Effort was made to put out the fire by the

use of a garden hose and at the same time the fire department was called out, but by the time it arrived the fire had spread to the plaintiff's buildings. The testimony in the record also shows that the wind was blowing from a northerly to a southerly direction, which would be from the fire toward the pile of material distant some ten or twelve feet therefrom.

A witness by the name of Borthwick, called on behalf of the plaintiff, testified that he saw black smoke on the lot occupied by the defendant's employees, where the fire was maintained some time in the forenoon of the day in question, that he last saw black smoke coming from said premises about 2 o'clock in the afternoon. He fixed the time by stating it was some time after he got back from lunch.

The testimony of Mrs. Young, the wife of the plaintiff, was to the effect that she saw smoke during the forenoon, and in the afternoon a short time before the fire she also saw smoke arising from the place where the fire had been maintained in the forenoon; that she saw two or three men working on the premises in the forenoon, but one only was there in the afternoon; that when they were burning a great mass of stuff, the flames would shoot up several feet; that during the forenoon the fire gave off a black smoke; that later on, as it burned down, it gave off a "sort of blue smoke." There was also testimony to the effect that in addition to the lumber, crates, cross-arms, etc., there was excelsior taken from the crates that had been used as packing around the insulators, the language of the witness being "excelsior brought up there and dumped in there"; that the pile of material extended down to within about ten feet of the driveway.

The testimony on the part of the defendant indicated that the burning of insulation in the afternoon was conducted by a man by the name of Clark, who was no longer in the employ of the company and no one seemed to know his whereabouts.

One of the witnesses for the defendant testified as to the distance of the fire from the edge of any of the material just referred to. His statement was that it was about ten or twelve feet; that the fire was maintained in the driveway; that the driveway was all clear, that there was no

debris in the driveway; that in burning the insulation, it fires up and makes a big smoke for a while and then is gone; that no ashes are left. This witness stated that a man by the name of Clark did the burning in the afternoon; that he and another employee of the defendant left the premises and returned to the premises along about 2 o'clock; that on their way back they picked up Clark, who had been left at the premises and stopped at the gates to see that they were locked; that the gates were locked; that Clark was working at the fire when this witness left, but whether he was burning insulation or not, he did not know; that when they returned to the lot they looked at the gate to see that it was locked, "looked at the gate and looked over the fire where we had been burning this stuff, everything looked all right."

"Q. What did you see there at the time? A. Nothing but little heat waves coming a little bit hot. Q. Did you go inside the yard? A. No. Q. Was there anybody in there at that time? A. No. My purpose in going back to the lot was to see if the gates were locked, also, to get Clark if the fire was out. When I came back to see if the gates were locked, I also noticed the heat waves."

This witness and the others mentioned then went out on a job about two miles away. On redirect examination this witness then testified as follows: "Q. You say you noticed heat waves coming from the fire? Do you mean from the fire? A. No. Q. Or from the place where the fire had been? A. From the wire, where the wire was at. Q. In other words, you mean the wire was probably still hot? A. Yes, sir. Q. You did not see any fire there, and you didn't see any smoke? A. There was no fire or smoke."

Another witness called by the defendant testified that he went into the lot about 2 o'clock P. M., found the gates locked, and there was no one in the yard when he arrived and when he left that he locked the gate when he left; that he did not see any smoke; that he and another employee walked on the north side of the piles of wire and noticed the heat; that one of the piles was about two or three feet high; that it was dry and dusty around the fire; that he did not notice anything combustible; that he could feel the heat, but there was no smoke.

Another employee of the defendant also testified that he did not notice any of the heat waves; that he accompanied Mr. Furman, who testified as to the heat waves; that he saw no smoke.

[2] The testimony of all of the witnesses was that the wind was blowing from the northwesterly direction, that is, from the fire toward the material piled as mentioned herein. There is no testimony on the part of any witness as to anything having been done toward putting out the fire. The witness who testified that he visited the premises to see if the gates were locked did not go inside, he only looked in. He saw heat waves only and no smoke. The testimony of this witness that he saw no smoke and no fire, after having testified that he saw heat waves, was in response to the following question: "Q. You did not see any fire there, you did not see any smoke? A. No, there was no fire or smoke." The weight to be given to this suggested testimony was primarily for the trial court in determining whether there was or was not any fire or smoke upon the premises at the time the defendant was examining the gates to see if they were locked and only looked over and did not enter upon the lot.

Other witnesses had testified that they saw smoke, a thin blue smoke. It is evident that whether it was a thin blue smoke or only heat waves, whatever it was the different witnesses saw, it came from a fire and the trial court was at liberty to draw such an inference or conclusion. The trial court was at liberty also to draw the inference that it was negligence for the employee to leave any substance that would cause either heat waves or smoke to arise therefrom within ten or twelve feet of such an inflammable substance as excelsior, when a wind was blowing from the direction of the fire toward the excelsior.

There is also testimony in the record to the effect that when the firemen came to put out the fire, the hose which they used caught on fire, when drawn across one of the places where the employees of the defendant had kindled and maintained a fire, as referred to.

While, as said by the trial court, no witnesses saw the actual start of the fire, and as shown by the record, no witness testified as to what, if anything, was done toward putting out the fire, the fact that any burning substance was in such

close proximity to the material of the kind and character piled upon the premises sufficient to cause either blue smoke or heat waves to arise therefrom, when the wind was blowing in that direction, that might reasonably be calculated to carry the fire to the inflammable material, lays a foundation sufficient to justify the court in inferring from such facts that the employees of the defendant left the premises without taking the reasonable precautions, which the circumstances demanded, to see that the fire which they had kindled was extinguished.   [3]   It is evident when a fire is maintained in such close proximity to combustible material at a time of the year when everything is dry, and when the wind is favorable for causing burning embers to be carried to the near-by combustible material, what might be ordinary care under other circumstances might reasonably be held by the trial court negligence under the circumstances attendant upon this case, and so clearly set forth in the excerpts which we have taken from the opinion of the trial court.

As said in the case of *Cobb* v. *Twitchell*, 91 Fla. 539 [45 A. L. R. 865, 108 South. 186]:

"Upon the state of facts before us, and in the absence of mitigating circumstances, a jury might reasonably conclude that the defendant, or his servants, did not observe reasonable prudence and ordinary care under the circumstances, in that they were not sufficiently thorough in extinguishing the original fire"; and also on the point of negligence, the court in that case further says:

"Such negligence, however, may be predicated not alone upon the circumstances under which the fire was kindled, or upon a failure to observe requisite precautions preliminary thereto, but may be established as well by appropriate proof that the defendant, after properly setting out the fire, failed to manage and attend it with reasonable prudence and ordinary care appropriate to the circumstances." (Citing cases.)

"The degree of care required to be used in any given case to avoid the imputation of negligence must be according to the circumstances or in proportion to the danger reasonably to be anticipated; such care as is ordinarily sufficient under similar circumstances to avoid danger and secure safety.

Negligence may be inferred from circumstances properly adduced in evidence, provided these circumstances raise a fair presumption of negligence; and circumstantial evidence alone may authorize the finding of negligence. . . .

"When the question of negligence depends upon a disputed state of facts, or when the fact, though not disputed, are such that different minds may reasonably draw different conclusions from them, the question is for the jury, or the trial court."

We think, under the circumstances disclosed by the record, it was reasonable and proper for the trial court to draw the inference that the defendant's employees had been negligent in not seeing that the fire was not entirely extinguished.

[4] While, of course, we cannot say that the defendant's employees were guilty of negligence as a matter of law in placing the fire where they did, it is a question of fact for the jury to determine, whether they did or did not properly safeguard the same before leaving the premises, and if the inference drawn by the court is reasonable, we are not at liberty to disturb the same. We think the testimony reasonably justifies the inference drawn by the trial court and the findings based thereon.

This court, in the case of *Paiva* v. *California Door Co.*, 75 Cal. App. 323 [242 Pac. 887], had occasion to set forth the law relative to inferences that might be drawn from facts established by circumstantial evidence, and in that case held from the circumstances so established, the inference could be reasonably drawn as to the origin of the fire. In the Paiva case the stump of a tree was shown to be on fire at a certain time, and that no other fires were kindled thereafter. This court said: "Taking it then as a justifiable inference that the stump was burning on Monday morning, and giving consideration to the further proved fact that a strong wind was blowing past the stump in the general direction of the place where the fire started, it would not be unreasonable in the absence of other explanation, to infer that the fire was caused by sparks from the burning stump," citing a number of cases. This language is pertinent to the instant case. It was not unreasonable for the trial court to draw the conclusion that the fire was communicated to the inflammable material ten feet away by reason of the wind that

was blowing in a direction that would tend to communicate the fire in question started and left by the defendant's employees in close proximity thereto.

In view of the testimony that a blue smoke was arising from where the fire had been maintained and also that heat waves were arising therefrom, whichever statement may be considered as correct, the inference is certainly reasonable that proper precautions were not taken to extinguish whatever remained of the burning embers, or of the burning insulation, or of the heated wire, under the circumstances disclosed by the testimony, especially with the wind blowing from a northerly direction and the season of the year, which common knowledge teaches us renders all kinds of wooden materials readily susceptible to fire.

As stated in 11 Ruling Case Law, 945: "In determining whether a person in starting a fire on his own land exercised such care, caution and diligence as a prudent and reasonable man would have exercised under the same circumstances, an important factor to be taken into consideration is whether there was at the time a wind which was reasonably calculated to spread fire. It has also generally been considered that the condition of the season as to dryness is an important element in determining whether a person exercised proper care in starting a fire on his own land." This principle would apply equally whether one had taken reasonable care in the extinguishment of a fire which had been maintained by one on his own premises.

All the subjects which we have discussed in this opinion are fully considered in an elaborate note contained in 45 A. L. R., beginning on page 870. See, also, *Dibble* v. *San Joaquin L. & P. Co.,* 47 Cal. App. 264 [190 Pac. 198].

The judgment of the trial court is affirmed.

Thompson, J., *pro tem.,* and Finch, P. J., concurred.