[Civ. No. 4904.   Third Appellate District.—December 21, 1933.]

F. J. RICHTER, Respondent, v. L. L. LARABEE, Appellant.

Henry & Bedeau for Appellant.

J. S. Daly for Respondent.

PLUMMER, J.—The plaintiff had judgment in the sum of $500 for and on account of the destruction of property on

lands belonging to him, by a fire alleged to have been set by the defendant for the purpose of burning grass on lands belonging to the defendant, and which fire it is alleged was negligently allowed to escape from the defendant's lands. The cause was tried by the court sitting without a jury. From this judgment the defendant appeals.

The record shows that on or about the twelfth day of June, 1932, the defendant obtained from D. W. Babcock, fire warden, a permit to burn grass on certain lands belonging to him. It appears from the record that the day was warm, the grass was dry, and a wind was blowing from where the fire was started toward the plaintiff's property, estimated at between twelve to fifteen miles per hour. There is some testimony that no wind was blowing when the fire was actually started, but that it came up in gusts. However, at about 11 o'clock of the day on which the fire was started, it got out of control of the defendant, and was burning toward the lands owned by the plaintiff. At this time the defendant called for assistance, and the fire department of Hagginwood, also the county fire warden came to the scene and assisted in apparently extinguishing the flames. The record shows that the defendant complied with the legal requirements preparatory to setting a fire. The court, however, found that the defendant was negligent in relation thereto, and awarded damages to the plaintiff to cover the value of the property destroyed by fire.

The appellant strongly insists that the finding of the court that the defendant was negligent in relation to the fire is not supported by the testimony, and so far as the record discloses, the actions of the appellant would indicate that he took all reasonable precautions prior to starting the fire; but that is not all that is required by the act of the legislature relating to the civil liability of one for failure to control a fire.

Section 2 of the act of the legislature, approved June 12, 1931, reads: "Any person who allows any fire burning upon his property to escape to the property, whether privately or publicly owned, of another, without exercising due diligence to control such fire, is liable to the owner of such property for the damages thereto caused by such fire. (Stats. 1931, p. 1644.)" This act purports to repeal section

3344 of the Political Code, and, also, section 3346a of the Civil Code, neither of which sections are mentioned in the title, but as no question is raised as to treble damages, we need not consider whether such portion of the act is violative of section 24 of article IV of the Constitution. In the foregoing act the liability for the destruction of another's property by fire may arise not only from negligently setting the fire, but also from negligently permitting the fire to escape.

As we read the transcript it appears that some time between 12 and 1 o'clock of the day in question, the fire was supposed to be extinguished, that is, to the extent that there were no visible flames upon the burned premises. That the fire was not put out is conclusively established by the fact that it sprang up again in two different places. After the fire was apparently extinguished, all of the parties left the premises, and the defendant went to his home about a quarter of a mile distant for the purpose of eating his dinner. While there a fire broke out in the neighborhood of a point designated in the transcript as "Banta's Mill". The defendant went to this place and watched the fire, and while there, the second fire sprang up near the plaintiff's property and destroyed that portion thereof for which damages were allowed.

Upon this appeal the appellant sets forth much testimony upon which it is claimed the court should have found a judgment in his favor. However, the findings of the court are based upon conflicting evidence, and if there is any evidence to support the findings of the court, we are concluded thereby. That there is such testimony appears from the following excerpts thereof. The defendant testified in part as follows: "Q. At the time you started the fire, what was the condition of the wind? A. I think, in fact I know, there was not a strong wind blowing; there was a tendency to a breeze, southeast. Q. After you started the fire with your three companions, what, if anything, happened? A. Well, we burned a very small corner out there. Q. About how much? A. I would say, possibly 50 feet square. It was burning very slowly and burning nicely. It seemed as though there was a gust of wind coming from the other way, and the grass was pretty dry, and it started to burn away from us." The witness then went on to describe the fire, and the fact of the fire warden having come to his

assistance, and the fire appearing to be out, and then testified: "Q. After he left what did you do? (This, referring to E. W. Davis, county fire warden.) A. Went to my house and sat down to eat my dinner. Q. Did you notice a second fire started? A. When I was eating my dinner I saw a big column of smoke through the window to the north. Q. Where was that fire at that time burning with reference to the burned area of your fire? A. Well, up to the north, right on the same line of fire as mine. Q. Well, after the fire department went away, you went away; you left the place; you left it supposing the fire was out; in other words, you did not remain there after the fire department went away, did you? A. I remained on my property, yes. Q. But that was down a quarter of a mile, was it not? A. Yes, it was. Q. And you went up and ate your dinner, and then you got in your car, did you not, and drove up to where the fire was before it had started up again? A. Yes. Q. You don't know what time this fire broke out the second time? A. No."

Mr. H. L. Davis, county fire warden, testified as follows: "Q. Tell the court what you did when you got there in reference to this fire? A. We came back to Camp Comfort and we were there, oh, quite some time,—we left, and I asked the man at Camp Comfort if he would watch it so in case it should happen to make a smolder and come up again, he would be able to catch it."

Fred Newell, an employee working on the golf links across the Auburn Boulevard from where the fire was burning, testified as follows: "Q. Was the wind blowing? A. Yes. Q. Strongly or mildly? A. Strong. Q. Did the fire burn continuous or did they get it almost out? A. I couldn't tell you, I wasn't over there. It was still smoking, that is all I know. Q. Still smoking all the time? A. Yes, after the fire department left. Q. You were within a short distance and you saw it? A. I was about a block away, block and a half. (Question by the court): When was the first time that you saw the fire after it was put out, or very nearly put out? A. The first time? The Court: The first time you saw it after it started up again, if it did start up? A. You mean before the first one? The Court: No. You saw the fire on the Larabee place then? A. About 12, between 12 and 1. The Court: You saw it put out, but still

continue smoking? A. Yes. The Court: How long after that was it active again? A. Must have been about one o'clock, or a little after. Q. They put the fire out, that first fire you saw burning? A. Well, they got it almost out, I would say I couldn't say it was out, I couldn't say it wasn't out. It was still smoking over there behind the buildings, the pump-house, up near his pump-house."

The witness Drexler stated a wind was blowing on the morning the fire was started.

The witness Wood testified that he helped to put the fire out; that the fire was apparently out; he further testified that it broke out again.

The witness Hortzman testified that the wind was blowing with a velocity of about fifteen miles per hour.

While, as stated, there is considerable testimony as to what was done in putting out the fire and getting it under control, it is undisputed that after the Hagginwood Fire Department and the fire warden went away, the defendant left the burned premises, went away to his dinner at a point a quarter of a mile distant, and took no action toward seeing that the premises were watched or precautions taken to prevent the fire from again becoming active.

The summary of the testimony which we have set forth shows that the embers of the fire were still smoking; that this smoke was seen by a witness who was at work at a distance of a block or a block and a half away, and that this smoking continued all the time until the fire broke out again, as we have stated.

In support of the judgment of the court the respondent cites the case of *Jennings* v. *Weibel*, 204 Cal. 488 [268 Pac. 901], where it is held not only that the trial court is the judge of the credibility of witnesses, but that the variableness of the wind should have prompted the exercise of the utmost vigilance to cut off all avenues of escape.

Likewise, the case of *McGillivray* v. *Hampton*, 39 Cal. App. 726 [179 Pac. 733], where it appears that the fire was left still smoldering when the defendant left the grounds where the fire had been started, and went away to eat his lunch.

In further support of the judgment the case of *Cobb* v. *Twitchell*, 91 Fla. 539 [108 So. 196, 45 A. L. R. 865], is cited as a further instance where the fire was supposed to

have been extinguished, when in fact it broke out again after a space of about two hours. The judgment in favor of the plaintiff on the grounds of negligence was supported.

A number of cases are cited by the appellant, but they do not contravene the principles enunciated in the cases just cited.

This court, in three cases not cited by any of the parties to this action, has had before it the question of destruction of property by fire after the same was supposed to have been extinguished.

In *Paiva* v. *California Door Co.*, 75 Cal. App. 323 [242 Pac. 887], a fire was left smoldering in the stump of a tree, and had been smoldering for a day or two. The question was as to the origin of the fire. This court said: ''Since no fires were kindled on defendant's premises on the 17th, it logically follows that it must have been burning on the morning of that day, and prior thereto. Taking it, then, as a justifiable inference that the stump was burning on Monday morning, and giving consideration to the further proved fact that a strong wind was blowing past the stump in the general direction of the place where the fire started, it would not be unreasonable, in the absence of other explanation, to infer that the fire was caused by sparks from the burning stump.'' The facts in that case show that the fire had smoldered for a considerable length of time; that there was no other fire kindled on the premises involved, and the question was as to whether the circumstances were sufficient to justify the inference that the fire which damaged the plaintiff's property in that action came from the stump that was left smoldering. This court held such testimony sufficient to send the cause to the jury and reversed the order of the trial court granting a nonsuit.

In *Young* v. *San Joaquin Light & Power Co.*, 83 Cal. App. 585 [257 Pac. 152], the fire was started in the morning on premises belonging to the defendant, and there, as here, was supposed to have been extinguished. However, during the afternoon smoke was seen to arise from the premises where the fire had been started, and later in the day it broke forth and destroyed adjoining property belonging to the plaintiff. In that case we held that the circumstances reasonably justified the inference of the trial court that the fire was caused by the negligence of the defendant's agents

in going off and leaving the fire without making sure that it was extinguished.

Again, in *Kennedy* v. *Minarets & Western Ry. Co.*, 90 Cal. App. 563 [266 Pac. 353], this court had occasion to examine the question of negligence in allowing a fire to smolder, which thereafter broke out and destroyed much property. In that case, fire had been started by employees of the defendant, and a certain log which had been covered up with dirt was allowed to smolder for two or three days. There was much testimony as to the fire being out, and as to the smoldering of the log, but after the log had smoldered for considerable time, the fire broke out in some dry grass close by, and this court held that such testimony created a reasonable inference that the fire started from the smoldering log, and that the defendant's agents were guilty of negligence in allowing the log to remain smoldering.

In the Kennedy case, *supra*, this court went into the question of negligence in allowing the fire to smolder, and cited a great many cases having to do with that subject. A reference to the Kennedy case is sufficient to show that the trial court in the instant case was justified in holding the defendant guilty of negligence in not safeguarding the premises after the fire was supposed to have been extinguished, and going away to eat his dinner while there were still smoldering embers, and while, according to his own testimony, the wind was blowing in gusts.

While it may not be said that the defendant was negligent in any of the preparations made by him to control the fire, there is plenty of evidence in the record to justify the trial court in coming to the conclusion that the defendant was guilty of negligence in going off and leaving the same unguarded.

The judgment is affirmed.

Pullen, P. J., and Thompson, J., concurred.