KENNEY v. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY, *Appellant.*

1. **Negligence of Railroad Company**: ESCAPE OF SPARKS: SUFFICIENCY OF EVIDENCE. In an action against a railroad company to recover damages for injury to plaintiff's farm by fire, alleged to have been communicated through the negligence of the company's servants, by sparks emitted from a locomotive, the evidence as to the origin of the fire showed only that just after a train of cars on defendant's road had passed through plaintiff's farm, smoke was seen coming down the railroad, and immediately the fire which did the damage broke out in plaintiff's field within one hundred feet of the railroad track. *Held*, that this was sufficient to warrant the sub-

mission of the case to the jury without direct evidence that any sparks escaped from the locomotive.

2. ———·  ———: PRIMA FACIE CASE  EVIDENCE IN REBUTTAL.  Since the decision in *Fitch v. Pacific R. R. Co.*, 45 Mo. 322, it has been uniformly held that a *prima facie* case is made out against a railroad company when it is proved that the fire which did the damage was communicated by sparks from a locomotive attached to a passing train, and that it then devolves upon the company to show that the escape of sparks was not the result of negligence on its part. To this end it may show that the engine and machinery were of the most improved pattern and make, and were managed by careful and competent servants in a skillful and careful manner. Evidence that the company's servants were careful and competent men will not of itself be sufficient to rebut the presumption of negligence on their part, but may be submitted to the jury, in connection with other facts, to enable them to determine whether, on the particular occasion in question, they were managing the engine carefully and skillfully.

3. ———:  ———: EVIDENCE.  Upon the trial of an action against a railroad company to recover damages for injuries to plaintiff's farm, occasioned by fire alleged to have escaped from one of the company's locomotives, the plaintiff exhibited to the jury an old worn and torn spark arrester as one of the defendant's.  The evidence showed that it was found on defendant's road a month before the fire complained of took place, and could not have been in use at the time of the fire.  *Held*, that its admission could have served no purpose but to inflame and prejudice the minds of the jury, and was, therefore, error.

*Appeal from Caldwell Circuit Court.*—HON. E. J. BROADDUS, Judge.

REVERSED.

The plaintiff in his petition claimed damages for two fires, one alleged to have occurred on the 1st day of February and the other on the 2rd day of February.

*Chas A Winslow* with *A. W. Mullins* and *George W. Easley* for appellant.

1.  There being no fact shown, independent of the mere escape of fire, from which negligence may be found,

the loss in *damnum alsque injuria.* Turnpike Co. v. Railroad Co., 54 Pa. St. 345; *Railroad Co. v. Hendrickson*, 80 Pa. St. 182; *Flynn v. Railroad*, 40 Cal. 14: *s. c.*, 6 Am. note p. 597.

2. There is no absolute presumption of negligence growing out of the fact that fire escaped from the engine. It is but an inference of fact, at the most, which is rebutted by showing that the " best machinery and contrivances were used to prevent such a result, and that careful and competent servants were employed." No contrivance has yet been invented to entirely prevent the escape of sparks from an engine. All that reason and prudence can possibly require is, that the most approved appliances shall be used and placed in the hands of skillful and careful servants. When this has been done, there can be no such thing as negligence predicated on the mere escape of sparks, and in order to make out a case for recovery, other elements of negligence must be shown. It is only for the negligent use of fire that railroad companies are responsible. Fire is a dangerous element, and yet one absolutely necessary for the generation of steam. Without its use in this respect the advancing civilization of the age must stand still. While this demand does not justify total immunity from damages occasioned by its use, it does not require that those who use it shall become insurers against consequent damages under all circumstances. The full measure of duty in this regard is, that those safeguards which the inventive genius of the age has produced and experience tested, shall be applied to prevent casualties, and that no negligence shall supervene in their use. Wharton on Neg., §§ 369, 872; Shear. & Redf. on Neg., § 332; *Smith v. R. R.*, 37 Mo. 287; *Fitch v. R. R.*, 45 Mo. 322; *Clemens v. R. R.*, 53 Mo. 366.

3. The court erred in permitting the old worn-out spark arrester to be paraded before the jury. *Coale v. R. R. Co.*, 60 Mo. 227.

*Shanklin, Low & McDougal* for respondent.

HENRY, J.—Plaintiff sued for damages for the destruction of thirty-five acres of meadow, thirty acres of pasture and 376 yards of hedging, by fire, which, he alleged, through the carelessness and negligence of defendant's agents, &c., in managing a locomotive engine on defendant's road, was communicated by sparks emitted by said engine. The answer was a denial of the allegations in the petition. Plaintiff obtained a judgment, from which defendant has appealed.

The evidence as to the origin of the fire was, that just after a train of defendant's cars passed through plaintiff's farm, about ten o'clock a. m., 1st of February, 1876, one witness saw smoke coming down the railroad, and discovered two fires. One did no damage; the other was inside of plaintiff's field, about 100 feet from the center of the track. The plaintiff testified that these fires started immediately after the train passed, and also that on the 3rd day of February, 1876, a fire broke out in his field immediately after the passage of a train of defendant's cars.

While railroad disasters are among the most fruitful sources of litigation, no other class of cases presents more questions of difficulty for judicial determination; and not the least difficult of that class are those growing out of fires communicated by sparks emitted from locomotives attached to passing trains of cars. There are some questions on this subject, well settled in this State, which are open questions elsewhere; while in other States a different doctrine from that prevailing here is equally well established. Since the case of *Smith v. The Hannibal & St. Joseph R. R. Co.*, 37 Mo. 287, was overruled in *Fitch v. The Pacific R. R. Co.*, 45 Mo. 327, it has been uniformly held here that a *prima facie* case is made out against a railroad company when it is proved that a fire was communicated by sparks from a locomotive engine attached to a passing

train, and that it then devolves upon the defendant to show that the escape of sparks was not the result of negligence on its part.

Another question is presented by this record, which has not been directly passed upon by this court, with re-

**1. NEGLIGENCE OF RAILROAD COMPANY: escape of sparks: sufficiency of evidence.** gard to the sufficiency of evidence to prove that the fire was occasioned by sparks emitted by the locomotive. The defendant contends that the evidence that the fire was so communicated was not sufficient to warrant the submission of the case to the jury, there having been no direct evidence that sparks were emitted by the locomotive in question.

One of the bases of evidence is, " the known and experienced connection subsisting between collateral facts or circumstances, satisfactorily proved, and the fact in controversy." 1 Greenleaf Ev., 17. It is recognized even in criminal prosecutions, as in the case of the possession of goods recently stolen, accompanied with personal proximity in point of time and place, and the inability of the possessor to show how he came by them. These facts warrant the inference that the possessor stole them. They are *prima facie* evidence of guilty possession. From the facts established the unknown fact is deduced, and is by the law presumed, and if the facts found, from which the other fact is presumed, be "unexplained, either by direct evidence, or by the attending circumstances or by the character and habits of life of the possessor, or otherwise, it is taken as conclusive." "Upon an indictment for arson, proof that property which was in the house at the time it was burned, was soon afterwards found in the possession of the prisoner, was held to raise a probable presumption that he was present and concerned in the offense." 1 Greenleaf Ev., 47, Mr. Greenleaf says: "It is the legal application of a process familiar in natural philosophy, showing the truth of a hypothesis by its coincidence with existing phenomena."

The locomotive carries fire; sparks escape from loco-

motives; a locomotive passed through plaintiff's field; no fire was seen in the field until after it passed, and immediately afterwards the fire broke out in the field. If A sue B for setting fire to his meadow, and the proof shows that the defendant was seen going through plaintiff's field carrying fire in a vessel from which, without care on his part, it might escape, and that immediately after he went through the field the meadow was discovered to be on fire, no fire having been seen there before, would a court be justified in declaring that there was no evidence to charge defendant with having carelessly set fire to the meadow? It may be, and is plausibly argued that it might have originated in other sources, and that it would be a hardship to hold the company liable, because it could not prove that the fire was communicated otherwise than by sparks emitted from its locomotive. The same argument might be urged in the case of one found in the possession of goods recently stolen. He may have come by them honestly, in divers ways, and until statutes passed recently permitted, he could not testify and explain how he procured them, and may not be able to corroborate a plausible statement he should make of his acquisition of the goods. "The true question, in trials of fact, is not whether it is possible that the testimony may be false, but whether there is sufficient probability of its truth," that is, whether the facts are shown by competent and satisfactory evidence. By satisfactory evidence, which is sometimes called sufficient evidence, is intended that amount of proof which ordinarily satisfies an unprejudiced mind beyond a reasonable doubt." 1 Greenleaf Ev., 4. The evidence that the train passed, with the other facts in proof, and that immediately after the passage of the train the fire was discovered in the field, tends as strongly to show a direct connection between the two events, as the possession of goods, recently stolen, tends to fix the guilt of stealing them upon the possessor.

In *Sheldon v. The H. R. R. R. Co.*, 29 Barb. 228, this question was before the court. There the defendant's train

passed within sixty-seven feet of plaintiff's mill, about an hour and fifteen minutes before the mill was discovered to be on fire. No one saw sparks or cinders emitted by the locomotive in the vicinity of the mill. No one testified whether persons were in the vicinity of the mill or not during the time intervening between the passing of the train and the occurrence of the fire. None of plaintiff's witnesses were at the mill, or saw it for several days before the fire. Five or six days before the fire a witness went to the mill and tried to get in, but failing, procured a key, entered and removed some tools he had there. He found the windows open and left them open. He was carpentering in the mill, leaving shavings, hay, straw and packing boxes in the basement. "The least spark," he said, "in the world, through the window, would have set it on fire." The court held, "that the evidence upon this principal question was not of such a character as entitled the plaintiff to claim a verdict from the jury, and that he was properly non-suited at the trial."

A marked difference between that and this case is, the length of time which elapsed in that case between the the passage of the train and the occurrence of the fire. This, in connection with the fact that fire communicated to the shavings and straw left by the carpenters, would, if set on fire by defendant's locomotive, have blazed up and been discovered in less than an hour and fifteen minutes after the train passed, and that it might have originated in many other sources, justifies the observation of the court that "standing alone, these circumstances do no more than make out a possible case, that possibly the fire proceeded from defendant's locomotive. It is not enough for the plaintiff to show a possibility that the fire was communicated to the mill by sparks emitted by the defendant's locomotive." Here, however, the one event immediately preceded the other, and it is not a mere possibility that the one caused the other; and, while the close connection of the two events in point of time is not a demonstrative or

conclusive proof of the dependence of one upon the other, it is sufficient evidence of the fact for the consideration of a jury. That juries are too apt, upon slight and insufficient evidence, to find verdicts against corporations will not justify courts in disregarding well settled rules of evidence; but these should be adhered to, and the hope indulged that sooner or later this vice in the administration of justice will be cured, in some legitimate way. Trial courts, by a fair and reasonable exercise of the right to set aside improper verdicts, may do much in that direction.

The instructions given for plaintiff declared that, if fire escaped from the engine and was communicated to

2. ———; ———. *prima facie case: evidence in rebuttal*

plaintiff's premises, it was *prima facie* evidence of negligence, and it devolved on defendant to rebut it by showing that the engine and machinery were of the most improved pattern and make, and managed by careful and competent servants in a skillful and careful manner. This we think a correct declaration of law. The defendant asked the court to declare that, under the pleadings and evidence, plaintiff could not recover; also, that there is no conclusion or presumption of negligence on the part of the defendant because the fire escaped from the engine. The court had not declared that there was a conclusion or presumption of law from the fact that fire escaped from the engine that the defendant's negligence was the cause of it, but had given a proper instruction upon the subject, which could not have been misunderstood, that it made out a *prima facie* case only.

There is a conflict between the fourth instruction given for defendant and the law as declared by the court for the plaintiff, in this, that in that instruction for defendant the jury were told that the *prima facie* case was rebutted, if defendant proved that the engine was furnished with the best machinery and contrivances to prevent the escape of fire, and that careful and competent engineers were employed in managing it, while the instruction for plaintiff

required the jury also to find that these careful and competent engineers managed the engine and machinery in a skillful and careful manner when the fire occurred. The instruction for plaintiff was correct, while that for defendant was incorrect, and should not have been given. It has not in this State, been held in these cases that where evidence of negligence has been introduced by plaintiff, it is rebutted by proof that the company had in its employment on the engine careful and skillful engineers and servants. If sparks escape through the most approved spark arrester, and careful and competent servants are employed, the inference is not an unreasonable one that the escape of sparks is attributable to carelessness in the management of the train, and, therefore, in order to rebut the *prima facie* case the defendant is required to prove not only that he had careful and skillful servants on the engine, but that they were managing it carefully and skillfully at the time. We are not to be understood as holding that the fact that skillful and careful servants were in charge of the locomotive is not evidence which a jury may consider in connection with the other facts in determining whether on the particular occasion they were careful, or that direct and positive testimony is required that they were, at the particular time, carefully managing the engine.

On the trial of this cause, the court, against defendant's objections, permitted plaintiff to produce in court and 

3. ———: ———: exhibit to the jury an old spark arrester, in
evidence. which the wires were worn and torn, and ask defendant's witness, then testifying, if it was not one of defendant's spark arresters. It was found in January, 1876, on the line of defendant's road where it passes through plaintiff's premises. This was some weeks before the fire complained of occurred. There was no evidence tending in the remotest degree to show that it was the spark arrester on the locomotive which passed there in February, 1876, the careless management of which was alleged to have caused the damage complained of; but all

the evidence on that subject conclusively showed that it could not have been used on that occasion. We cannot conceive a reason for admitting that evidence or allowing that performance. It could have served no purpose whatever, but to inflame and prejudice the minds of the jury; and juries are not so inclined in favor of corporations as to require a resort to such means to procure a verdict against one, when the opposite party is entitled to it. For this error, all concurring, the judgment is reversed and the cause remanded. NAPTON and NORTON, JJ., concur; SHERWOOD and HOUGH, JJ., in the result.