WRIGHT, Respondent, v. CHICAGO & ALTON RAILWAY COMPANY, Appellant.

**St. Louis Court of Appeals, May 10, 1904.**

**RAILROADS: Fire Set by Locomotive: Prima Facie Case.** In an action against a railroad company for damages caused by a fire alleged to have been set on plaintiff's premises by sparks from one of defendant's engines, where the evidence showed that one train and perhaps two had passed immediately before the fire was observed, that the fire was started among dry grass on the right-of-way on the side towards which the wind was blowing, and no other possible origin of the fire was shown, a prima facie case was made out for the jury. (Distinguishing Gibbs v. Railroad, 104 Mo. App. 276.)

Appeal from Audrain Circuit Court.—*Hon. H. W. Johnson,* Judge.

AFFIRMED.

*Scarritt, Griffith & Jones* for appellant.

*J. O. Barrow* and *Fry & Rodgers* for respondent.

GOODE, J.—This is an action for damages caused by a fire alleged to have been set by a locomotive of the defendant railway company. The fire consumed a considerable stretch of hedge fence on the plaintiff's farm and fields of standing corn, grass, oat-stubble and some fenceposts. It occurred in the fall of 1902. Plaintiff obtained judgment and defendant appealed.

The only question that demands attention is as to the sufficiency of the evidence offered to prove the fire was kindled by sparks thrown from one of the defendant's locomotives. The foreman of that section of the railroad testified that about noon and after a passenger train had passed along defendant's track through plaintiff's farm, he observed smoke and fire in one of the fields, and, with a part of his men, boarded a handcar and ran to where the fire was. By that time it had burned over a considerable tract. The witness said:

"Q. When you got up there, state to the jury what you saw in the way of that fire? A. Well, the fire had made out about two hundred yards from the fence, I guess, and it was spreading out.

"Q. On which side of the track was the fire? A. On the north side.

"Q. How close to the railroad track had this fire burned? A. Well it was burning right along the fence when I got up there; along about the right-of-way fence; probably on the other side, more on the inside; it seemed to be burning along slowly on the fence there.

"Q. It was from the southwest, the wind? A. Yes, sir; I didn't pay much attention to the fence; I went on to the fire; I didn't notice very close.

"Q. What kind of ground was this it was burning on where it started there? A. It started in—I think it was mostly grass and stuff right in where the hedge had burned out, and probably quite a good deal of undergrowth along there; the time I got there it had reached out; it was into the cornfield and stubblefield, but I could see from where it started that it started about that point where there wasn't any corn. Well, where the fire started there wasn't any corn, I think, or anything else; just wild grass; there wasn't anything; just a small patch of flat ground in there.

"Q. How long after you got to the fire was it that Mr. Wright came down there? A. Well, it must have been thirty minutes, I reckon, anyhow.

"Q.  How much?  A.  Thirty minutes.

"Q.  Along the railroad track where you first saw it burning there was dry grass along there, was there? What kind of stuff was on the ground?  A.  Well, there was some grass.

"Q.  Had the growth on the right-of-way been mowed down?  A.  Yes, sir.

"Q.  Was it laying there?  A.  I think it had been burned off.

"Q.  You are sure about that?  A.  I would not be sure about that, no I wouldn't.  ·

"Q.  And you say where you first saw it there under the fence was dry grass?  A.  The fire was fighting along the fence, like, right close to the fence, or in amongst it; right in close to it anyway.

"Q.  It was burning back onto the right-of-way too?  A.  Yes, sir.

"Q. Now, Mr. Burgess, after you started you didn't meet any freight train going up there did you?  A.  No, I didn't meet any freight train.

"Q.  Then if a freight train had passed, it passed before you got up there?  A.  No, there hadn't any freight train passed going east before I got up there.

"Q.  Then this one might have gone west on the sidetrack there?  What is your recollection about the freight train?  A. The best of my recollection is that the freight train was in on the sidetrack waiting for the passenger.

"Q.  Now what was the view from the point where you first saw the fire, from there to Vandalia; was it in view of Vandalia?  A.  Yes, sir."

Plaintiff testified that he had been to the town of Vandalia that day and while driving home observed the fire from the highway.  He first noticed a passenger train pass and then saw heavy smoke rise from his fields. He reached home in from twenty to twenty-five minutes, and by that time much of his farm had been swept by the fire.  It appears there was a high wind blowing from

the track toward where the fire started. There were dry grass and other combustible stuff where it started. It was first observed immediately after the passage of one train and perhaps after the passage of two. It was shown that a passenger train went by just before the fire was detected and that a freight train had either gone by shortly before or was switching at the time on an adjacent sidetrack. No other possible origin of the fire than sparks from a locomotive was shown. These facts, according to decisions in this State, made a prima facie case for the jury. Kenny v. Railroad, 70 Mo. 243, Id. 252; Rebman v. Railroad, 76 Mo. 550; Sappington v. Railroad, 14 Mo. App. 86. The case is distinguished from Gibbs v. Railroad, 104 Mo. App. 276, 78 S. W. 835, by the fact that no other possible origin of the fire than a locomotive was shown and other fires had been set in plaintiff's fields by locomotives. In the following cases there was a much longer interval between the passage of a train and the discovery of the fire. Peffer v. Railroad, 95 Mo. App. 291; Bates v. Railroad, Id. 330; Peck v. Railroad, 31 Mo. App. 125. Some of the cases in which contrary results were reached bear resemblance to those just cited, but on close examination will be found to present circumstances sufficiently dissimilar to justify the ruling that there was evidence for the jury as to the defendant's responsibility in some instances and none in others. Taking into consideration the highly combustible growths adjacent to the right-of-way, which a spark would readily ignite, the direction of the wind, the appearance of fire and smoke just after the passage of trains, the fact that it was promptly detected, that no other source was shown for it than engine sparks, and that other fires had been set on the farm by defendant's locomotives, we think a case was established.

There are some minor assignments of error which we have examined, but deem it unnecessary to discuss them. They will be overruled as not well taken.

Judgment affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.