[Civ. No. 3460. Third Appellate District.—April 2, 1928.]

ROSE R. KENNEDY, Respondent, v. MINARETS & WESTERN RAILWAY COMPANY (a Corporation), Appellant.

Everts, Ewing, Wild & Everts, Dan F. Conway, Herbert J. Goudge and Harry I. Maxim for Appellant.

Barcroft & Barcroft and Conley, Conley & Conley for Respondent.

PLUMMER, J.—In this action the plaintiff obtained a verdict against the defendant Minarets & Western Railway Company, a corporation, for actual damages in the sum of $8,505, which amount the court thereafter, upon motion, trebled under the provisions of section 3344 of the Political Code and section 3346a of the Civil Code, and thereupon entered judgment. From this judgment the defendant Minarets & Western Railway Company, a corporation, appeals.

The record shows the plaintiff to be the owner of 3,600 acres of land and the lessee of about 600 acres of land situated in the foothills of Madera County, and that the defendant Minarets & Western Railway Company is a corporation and at the time mentioned in the complaint was operating a railroad from a point near Friant, in the county of Fresno, to and extending in a general northeasterly direction into the county of Madera, to a point at or known as Central Camp. That the general course of the line of railroad in the county of Madera was along and near the lands

belonging to the plaintiff situate in the county of Madera. That on or about the seventh day of July, 1925, the defendant Minarets & Western Railway Company, by its agents and employees, was engaged in burning grass and rubbish along its right of way in the county of Madera. That on or about the said seventh day of July, 1925, while the said railroad company, through its agents and employees, was engaged in burning grass and rubbish along its said right of way, a sudden gust of wind carried the fire beyond the right of way belonging to the railway company, which at the place described is of a width of 100 feet, and set fire to dry grass and rubbish beyond the railway company's right of way. The fire thus started burned over about 160 acres of land belonging to a person other than the plaintiff in this action. Thereafter and on or about the fifteenth day of July, 1925, another fire took place at or near the scene of the first fire and burned over an area of about one acre before it was extinguished. Thereafter and on the seventeenth day of July, 1925, a third fire occurred (which is the fire involved in this action); which burned over 2,720 acres of land belonging to the plaintiff, which lands were mostly covered by pasturage, but had standing and growing thereon brush and also a certain quantity of timber, which timber the testimony shows to be fit for firewood as hereinafter stated. The fire on the 17th also consumed fences belonging to the plaintiff of some miles in length. Also, the testimony tended to show that two calves and one cow belonging to the plaintiff were burned in said fire. This action is prosecuted to recover the damages occasioned by the fire on the 17th, and which is alleged to have occurred by reason of the negligence of the said defendant, its agents and employees, in not extinguishing the fire that occurred on the 7th of July, 1925. The theory of the case being that the railway company negligently failed to extinguish fire from certain stumps and logs lying upon the area covered by the first fire and set on fire thereby. The defendant denies that it negligently or otherwise failed to extinguish the fire which occurred on the seventh day of July, 1925, and upon this appeal, sets forth that the testimony is insufficient to support the verdict, on the theory that the fire of the 17th was occasioned by the negligence of the defendant railway

company. That the testimony is insufficient to show that the plaintiff suffered the actual damages awarded. That the court erred in the admission of certain testimony, and that the court erred in awarding treble damages.

The testimony shows, practically without contradiction, that after the fire of July 7, 1925, a number of stumps of trees, and particularly a certain bull pine log some 18 or 20 feet in length and about two feet in diameter, were left without the fire therein being completely extinguished. That the bull pine log around which the major portion of the testimony circulated, was left smoking on the eighth day of July, 1925, and that this bull pine log was within from three to five feet of a tract of unburned dry grass and also near a clump of underbrush. The record also shows without contradiction that a fire occurred within close proximity to the lot just mentioned and the stumps referred to, on the fifteenth day of July, 1925, and that on the seventeenth day of July, 1925, when the fire was first discovered, it was within about 20 feet of the bull pine log mentioned herein. No eye-witness saw the beginning of either the fire on the 15th or of the fire on the 17th of July. There is testimony to the effect that smoke was seen coming from the bull pine log three or four days after the 7th of July, and there is also testimony from a witness on behalf of the defendant, that the bull pine log was not on fire on the 17th, at the time the fire was discovered in the dry grass and underbrush within 20 feet thereof.

The appellant sets forth at length extracts from the testimony of different witnesses upon which it bases its claim that the origin of the fire is not traceable to a fire left in the bull pine log herein referred to or to any of the burning stumps of trees left upon the premises included within the area of the first fire. This necessitates a summary of the testimony. A witness by the name of Walker testified that he saw the fire on the seventh day of July, 1925; that he was present at the scene of the conflagration; that he went to the place where the bull pine log lay, and that it was burning; that he saw some men there who were covering the log with dirt; that he said to them that was no way to fight the fire in the log, that the wind would come along and blow it off, and blow sparks to the adjacent land; that he told the men

there was a spring of water about 150 yards away; that the log was about 18 to 20 feet long and about two feet in diameter; that there was a good deal of smoke coming from the log late on the evening of the 7th; that the log was from three to four feet from the grass line.

A witness named Otis Boss testified that he saw the log on the night of the fire after the grass fire was put out; that the log was still smoking; that it had been covered, or about half of it covered with dirt; that some time after that, he did not remember the date, he saw the log and it was still smoking; that he saw the log after the big fire on the 17th and it was then burning; that at the time he saw the log before the big fire it was about three or four feet from the grass line; that after the big fire there was no grass near the log in question; that after the fire of the 7th he saw the log in question three or four times, but that he did not try to put out the fire in the logs; that he thought there was danger in it, but he thought the railroad company had men to watch the logs.

The witness Mrs. Nancy Boss testified that she saw the log in question after the fire of the 7th; that it was still smoking three or four days after the fire on the 7th; she saw no smoke coming from any other quarter except in the direction of the bull pine log, and that before the 17th she did not see smoke coming from any other direction than that in which the bull pine log was located.

The witness Neal Boss testified that he was over the fire line of the 7th two or three days after it stopped; that he saw logs burning and lots of smoke; that he was at the location of the bull pine log a day or two after the fire of the 7th; that it was partly covered with dirt, and that it was burning at that time; that he saw the bull pine log after the 17th of July; that some of it was still left and was smoldering some; that he did not see smoke coming from any other place except from the log just mentioned, after the 17th, the day of the big fire; that the log in question was four or five feet from the grass line; that there was a spring of water 150 or 200 yards away; that the spring would have furnished sufficient water to have put out the fire.

The witness J. B. Baker testified that he had lived 25 years in the neighborhood where the fires appeared; that it

often happened that a whirlwind would carry fire a long ways.

The witness Kitchell testified that he saw oak stumps burning, one oak stump between eight and ten feet in height; that he did not see anyone attempting to put out the fire in the particular oak stump.

The witness Hannagan testified that the fire of the 7th burned over about 200 acres; that he went past there every day after the fire; that he noticed several logs burning, but did not notice any one log particularly; that he saw the start of the fire on the 17th, and it appeared to come from the direction of the location of the bull pine log.

Rose R. Kennedy, the plaintiff, testified as to a smoke coming from the bull pine log for several days after the fire of the 7th.

The witness Sutherland testified that he saw the bull pine log on the 18th and 19th of July; and that the bull pine log was burning; that more of the log was then burned than had been burned by the fire of July 7th.

James Hughes, an employee of the defendant, testified that he saw logs smoking or burning on July 8th.

Charles Enlow, a witness called on behalf of the defendant, testified that he put some additional dirt on the smoking log in question after the railroad men left; that they left bare spots on the log; that when he got to the log first, they were chopping it off, some of them, and some of them were shoveling dirt on it, and punching out the fire, they were smothering out the fire that was on it at that time; that some of the log was left bare; that it was still smoking when the railroad men left. This witness also testified as to two small fires which occurred about the 15th in the same neighborhood; that he assisted in putting out the fire of the 15th; that the fire of the 15th covered about an acre and a half of ground.

Paul Enlow, another witness for the defendant, testified on cross-examination that there were stumps of trees left burning after the fire of the 7th; that the men went away leaving things burning. We here give the questions propounded to this witness and his answers: "Q. And they left several stumps burning, did they? A. I think they did. Q. And they went away? A. Yes, but they were out of

danger. Q. I know they were, but when they went away, they went away leaving things burning? A. Yes, sir. Q. And they did not take any pains to put that out? A. I don't know whether they did afterwards or not. Q. Well, they didn't while you were there? A. No, sir. Q. They went away? A. Lots of them they did put out and lots of them they did not."

Mr. O'Connor, a witness called on behalf of the defendant, testified as to what was done toward putting out the fire in the bull pine log on the 8th of July; that it was covered with dirt.

The witness Hughes, called by the defendant, testified that he went there on July 8 with two Mexicans; the log was smoldering some and they covered it with dirt; that there was a little smoke coming from another log in the gulch about 150 or 200 feet away; that they cleaned out the grass away from the log in the gulch 20 or 25 feet.

The witness, Patton, called by the defendant, testified that the fire in the stumps and in the log was put out by the 10th of July; that he left on the evening of the 10th of July and did not see any smoke coming from the log in question; that he left about 4 o'clock in the afternoon of the 10th. There was also testimony to the effect that the 17th of July was a record day for heat. The testimony further shows that at the time of the year in question the whole country was exceedingly dry. Testimony was also admitted as to the fact of there being a severe electrical storm eight hours after the fire of the 17th, but as there appears nothing in the record showing any connection between the electrical storm and the fire which we have been discussing, this subject may be dismissed without further comment. The testimony also shows that at the time the employees of the defendant railway company were engaged in burning grass and rubbish along the highway belonging to the company, the men had with them a car containing a water-tank holding about 6,500 gallons of water, but so far as the record shows, no water was used from this tank in putting out the fires in the stumps of trees or fallen logs referred to in the testimony. The only method used in safeguarding against the spread of the fire or its being carried by gusts of wind, was by covering the fallen logs with dirt. There was also

testimony on the part of the employees of the defendant that they had put out the fires in the stumps and logs within the area covered by the first fire, and also that they had put out the fire in the bull pine log of which we have made particular mention.

Upon this testimony, a *résumé* of which we have given, it is strongly urged by the appellant that the jury was unwarranted in drawing the inference that the fire of the 17th was communicated to the adjoining dry grass by any fire left smoldering in the bull pine log. That it is unreasonable to infer that the fire smoldered in said log from the 7th to the 17th of July. As against this, there is ample testimony for the jury to conclude that the bull pine log was on fire as late as the 18th or the 19th of July, 1925, which would necessitate the conclusion, if the appellant's theory is correct, that the fire started some feet away from the bull pine log and was communicated to it from the burning dry grass testified to by different witnesses as being distant from the log some three to five feet. The conclusion is unescapable that the fire went either from the grass to the log or from the log to the grass. The testimony in the record is amply sufficient to show that the log was on fire for a few days after the 7th of July, just how long, the testimony does not show. And as we have just stated, the testimony is such that the jury could not escape coming to the conclusion that the log was on fire after the 17th of July. There is no explanation in the record as to how the fire started on the 15th of July. The record does show, however, that it started within the vicinity of smoldering stumps, or of stumps which had been smoldering not far from the bull pine log not very far from the logs situated within the gulch mentioned by one of the witnesses. There is some testimony to the effect that the fire on the 17th started in the vicinity of a log lying in the gulch referred to by witnesses, which was also smoldering after the fire of the 7th. So far as we have been able to discover, no witnesses testified as to how long a fire will smolder in a log of the variety under consideration in this case. If there is any such testimony in the record, counsel at least have failed to call our attention thereto. The jury had before it, however, testimony from which they could conclude that the follow-

ing facts were established: That the bull pine log was set on fire on the 7th of July; that it was on fire three or four days thereafter; that a fire occurred on the 15th, origin unknown; that a fire occurred on the 17th, and that the bull pine log was burning on the 18th; that prior to the fire of the 17th, dry grass had been left at a distance of only three to five feet from the smoldering log. The country in question, at the time of the year involved, was exceedingly dry; gusts of wind were not uncommon; that a whirlwind would carry sparks to a considerable distance. From the premises thus laid down the jury had the duty of drawing an inference as to the origin of the fire of the 17th. That the fire in the bull pine log might have been readily extinguished by putting a little water thereon, seems to be unquestioned. The testimony in the record also leads to the conclusion that covering a log with dirt instead of putting out the fire, tends to cause it to smolder for a considerable period of time.

In the case of *Paiva et al.* v. *California Door Co.*, 75 Cal. App. 323 [242 Pac. 887], this court had before it an action involving inferences as to the origin of a fire. In that case the plaintiff contended that the defendant negligently left smoldering fires in two stumps near the west boundary line of its land, and that the evidence warranted the inference that fire was communicated from one of these stumps to the inflammable pine-needles and leaves covering the land where the fire was discovered. This court said: ''There is no direct evidence that either of these stumps was burning on Monday morning. If they were burning at that time, in the absence of any other evidence as to the origin of the fire, it might be inferred, reasonably, that the high wind carried sparks or pieces of burning material from one of the stumps to the place where the fire started.'' The court then set forth the evidence tending to show that there was fire in these stumps, and held, after a summary of the evidence, that the question as to the origin of the fire and that the fire might have followed from being blown from said stumps to the adjoining combustible material by the wind, was a question to be submitted to the jury, and in the absence of explanation as to how the fire started, it was not unreasonable to infer that the origin of the fire was in said smoldering stumps. In the Paiva case the defendant's

employees were engaged in burning on defendant's property on Saturday, and quit work at about 3 o'clock on that day; that a fire broke out on the premises involved, Sunday night; that the fire which did the damage in the Paiva case started some time on the following Monday. The testimony in the Paiva case also showed that a very high wind was blowing on the day the fire started. In considering the question as to leaving smoldering fire in stumps, this court further said: "It is not intended, of course, to express any opinion as to the weight of the evidence produced at the trial, but viewing the evidence in the light most favorable to the plaintiff, as is required on a motion for a nonsuit, sufficient evidence appears to prove a *prima facie* case in favor of plaintiff. It cannot be said as a matter of law that it is not negligence to leave burning stumps unguarded during the dry season in close proximity to lands covered with trees, brush, leaves and grass. It is reasonably to be anticipated that a wind may carry sparks from the burning stumps to the inflammable materials on the adjoining lands."

In *Young* v. *San Joaquin Light & Power Co.*, 83 Cal. App. 585 [257 Pac. 152], this court had before it an action involving damages alleged to have been caused by a fire negligently left to smolder by the defendant. It is there held that the leaving of a smoldering fire within 10 or 12 feet of inflammable material when a wind was blowing from the fire toward the plaintiff's property, presented to the trial court a question of fact as to negligence and also a question of fact as to the cause of the fire, and that the trial court was justified in concluding that from such facts the fire under consideration was caused. It may be stated further that in that case the testimony showed that the premises where the fire started were inclosed by a fence where the gate through which entrance was usually had thereto, was ordinarily kept locked. The testimony in the Young case showed that for some little time after the fire had been started by the defendant's employees, smoke was seen rising from the premises. In the case just cited this court took up and referred to a number of other cases relative to the negligence of the defendant in starting and negligently leaving fires unguarded (citing, also, the case of *Paiva* v. *California Door Co., supra*). The court also cited cases as to

inferences to be drawn as to neligence of a defendant from not taking proper precautions to extinguish a fire which had been lawfully started.

■ Actionable negligence may be established by proof that the defendant, after properly setting out a fire, failed to manage and tend it with reasonable prudence and ordinary care appropriate to the circumstances. ■ Thus, what would be reasonable diligence and prudence and ordinary care in extinguishing a grass fire where the substance left as burning embers is very slight and almost negligible, would be entirely inadequate and fail to be proper care or even ordinary care in the event that the burning embers or smoldering substance is of such a character that a fire might be retained therein for a considerable period of time and fanned by a gust of wind, a strong wind or a whirlwind, and sparks therefrom carried to combustible substances near by. The nearness of the combustible substance would also present a question to be considered in determining whether ordinary care had been taken to extinguish the smoldering fire. In this case, where the combustible substances were shown to have been within three to five feet, and the fire was smoldering in a substance likely to retain fire for a considerable period of time, the care required to be ordinary care might, as to dissimilar circumstances and where the damage was not so close or imminent, be classed as the highest possible degree of care. In other words, the circumstances and conditions must be taken into consideration to determine whether ordinary care has or has not been exercised. ■ Again, direct evidence is not required in order to justify a jury in reaching a conclusion as to the origin of a fire. In the case of *Dibble* v. *San Joaquin Light & Power Co.*, 47 Cal. App. 112 [190 Pac. 198] we find the following: "Appellants also claim that there is no evidence to show that the employees in question either started the fire or failed to extinguish it, or that they negligently permitted it to spread. While it is true there is no direct evidence as to the origin of the fire, the trial court had the right to make any logical, reasonable deduction, which the admitted facts and the undisputed testimony of the witness McCabe permitted. (*Davis* v. *Hearst*, 160 Cal. 143, 176 [116 Pac. 530].) It is a fair inference that the flames

which destroyed plaintiff's property were communicated thereto by the fire, which originated on the right of way of defendants, and which had its origin in one or the other of the instrumentalities used by defendants' employees in their work. (*Reuter* v. *San Pedro etc. R. R. Co.*, 37 Cal. App. 277 283 [174 Pac. 927]; *St. Paul Fire etc. Co.* v. *Southern Pac. Co.*, 30 Cal. App. 140, 142 [157 Pac. 247]; *Fay* v. *Cox*, 45 Cal. App. 696 [188 Pac. 623]; *Toledo. etc. Co.* v. *Fenstermaker*, 163 Ind. 534 [72 N. E. 561, 562]; *Roundtree* v. *Mt. Hood etc. Co.*, 86 Or. 147 [168 Pac. 61].) It is equally clear to us that the employees of defendants were guilty of gross carelessness in not properly controlling and extinguishing the fire when their attention was directed by McCabe to the probability of its spreading. It was burning in tall, dry grass near the adjacent fields of stubble and grain and it should not have required any warning to apprise them of this imminent danger."

In the case of *Cobb* v. *Twitchell*, 91 Fla. 539 [45 A. L. R. 865, 108 South. 186], the court, in considering testimony as to negligently leaving a fire, stated the rule as follows: "In the absence of a controlling statute, negligence will not be presumed but must be proved, the burden being upon the party alleging it. Such negligence, however, may be predicated not alone upon the circumstances under which the fire was kindled or upon a failure to observe requisite precautions preliminary thereto, but may be established as well by appropriate proof that the defendant, after properly setting out the fire, failed to manage and attend it with reasonable prudence and ordinary care appropriate to the circumstances." (Citing a number of authorities.) And, further, as to the question of care in extinguishing a fire, said: "Upon the state of facts before us· and in the absence of mitigating circumstances, a. jury might reasonably conclude that the defendant or his servants did not observe reasonable prudence and ordinary care under the circumstances in that they were not sufficiently thorough in extinguishing the original fire, or that the fire-guard constructed by them, in its dimensions or manner of construction, was not adequate or suitable under the circumstances," etc. The fire in the case of *Cobb* v. *Twitchell* was one that broke out a few hours after the agents of the defendant had supposed it was ex-

tinguished. The fire they had started and supposed they had extinguished was near dry grass, brush and other combustible material. None of the witnesses seem to know how the fire started two hours after they had supposed it had been extinguished. Appended to the case of *Cobb* v. *Twitchell, supra,* is an extended note wherein may be found a number of cases having to do with damages occasioned by fires, and supporting the text of the case from which we have just quoted.

In the case of *Viera* v. *Atchison, T. & S. F. Ry. Co.,* 10 Cal. App. 267 [101 Pac. 690], an action involving damages by fire, the court, in considering the sufficiency of proof, used the following language which is applicable to the case at bar: "The burden was upon the plaintiff to prove that the fire was caused by the defendant; that it was also due to defendant's negligence, but such proof need only be by a preponderance of evidence, and such as to satisfy and produce conviction in an unprejudiced mind. The law does not require demonstration or absolute certainty, because such proof is rarely possible. Moral certainty only is required. We must call in aid of the verdict all deductions which the jury could make from the facts proved. Nearly all cases are determined on the reasonable probability of the fact being as found."

In *Hudspeth* v. *St. Louis & S. F. Ry. Co.,* 172 Mo. App. 579 [155 S. W. 868], in an action involving damages occasioned by sparks from a railroad engine where a barn situate some distance from a railroad track was burned, the court, in speaking of the proof required, held as follows: "There was no direct proof that defendant's engine, which passed a short time before the fire was discovered, actually emitted sparks or fire, nor any positive testimony that such sparks, if emitted, could, on the day in question, have been blown the distance to plaintiff's hay and remained hot enough to ignite it. The evidence to make out liability on the part of the defendant was, as is usual in these cases, purely circumstantial. Nevertheless, the probable origin of the fire may be shown by circumstantial evidence; provided the circumstances relied upon are consistent and tend, in a substantial way, to support the claim of plaintiff, and make it probable, and justify a reasonable inference that the fire

was caused by sparks from defendant's engine.'' (Citing *Campbell* v. *Railroad*, 121 Mo. 340 [42 Am. St. Rep. 530, 25 L. R. A. 175, 25 S. W. 936] ; *Waddell* v. *Railway Co.*, 146 Mo. App. 604 [124 S. W. 588] ; *Foster* v. *Railroad*, 143 Mo. App. 547 [128 S. W. 36] ; *Market* v. *Railroad*, 139 Mo. App. 456 [122 S. W. 1142] ; *Tapley* v. *Railroad*, 129 Mo. App. 88 [107 S. W. 470] ; *Lead Co.* v. *Railroad*, 123 Mo. App. 394 [101 S. W. 636] ; *Wright* v. *Railroad*, 107 Mo. App. 209 [80 S. W. 927].) What we have here said is also supported by the following cases: *Bowles* v. *Hickson*, 22 Cal. App. 264 [133 Pac. 1149] ; *Reuter* v. *San Pedro R. R. Co.*, 37 Cal. App. 277 [174 Pac. 927] ; *McGillivray* v. *Hampton*, 39 Cal. App. 726 [179 Pac. 733].

▮ The jury in this case had before it the question as to the reasonable probability of the fire being communicated to the near-by grass from the smoldering fire left in the bull pine log. In addition to what we have said, the testimony shows that the grass in the neighborhood of the log was very short, and also had been burned around the log by the fire of July 7th, leaving an intervening space of between three and five feet. Under all the circumstances disclosed, we think the jury was warranted in coming to the conclusion that it was reasonably probable that the fire started from the log and was communicated from the log to the adjoining short grass, rather than the short grass communicating any fire to the log on July 17th. We think the testimony is also sufficient to justify the jury in concluding that the agents of the defendant had not used reasonable precautions in extinguishing the fire in the burning log. In this particular the evidence tends to show that what was done would cause the fire to smolder for a considerable period of time rather than to extinguish it. We also think that the jury was justified in concluding that the fire smoldered during the entire period of time in the bull pine log, the testimony showing that there was a smoldering fire in the log some days after the fire of July 7th; that a fire occurred on the 15th in the same neighborhood; that a fire occurred on the 17th, and the log was shown by the testimony to be still on fire on the 18th of July, laid the foundation justifying the jury in reasonably concluding that the origin of the fire of the 17th was from the fire left smoldering in the bull pine log.

■ The appellant urges that the admission of testimony as to the fire which occurred on July 15th was prejudicial and constitutes sufficient ground for reversal. This contention we think untenable. The fires mentioned were all so closely connected as to constitute a series of circumstances tending to show the origin of the fire. The fire of the 7th of July left burning stumps and logs. In the immediate vicinity of these burning stumps and logs a fire occurred on the 15th, and again on the 17th, and as shown by the testimony, burning logs were on the premises on the 18th of July. The objection urged by the appellant we think completely answered in 12 California Jurisprudence, page 533, section 10, which reads as follows: "Where it is claimed that a fire was caused by sparks thrown from an engine, it is permissible to introduce evidence of other fires caused by the same engine in the same vicinity and about the same time, or to show facts tending to prove that other fires were so caused. The admission of such evidence is a question of policy and expediency in view of the pressing necessity of resorting to circumstantial evidence in a case in which direct evidence is not ordinarily to be had. So, also, evidence of fires emitted or dropped by other engines of the defendant in the vicinity and about the time of the fire is admissible, particularly when the particular engine throwing the sparks which caused the fire complained of is not identified. Questions as to the proximity of time and place to which the proofs must be confined can only be determined in view of the circumstances as the testimony is offered. Evidence of other fires within a few days of the fire in question is proper." The record in this case, however, further shows that after making objection to the testimony of one witness concerning the fire of the 15th, evidence was elicited from one of the defendant's witnesses showing all the circumstances of the fire of the 15th of July, and this testimony was all admitted without any objection on the part of the appellant. The objection of the appellant as to the ruling of the court in excluding testimony as to an entirely disconnected fire upon premises belonging to another party at a considerable distance from the scene of the fire in controversy, is likewise without merit.

The appellant also contends that the judgment in favor of the plaintiff finding actual damages, is unwarranted by the testimony. The record, as we have stated, shows that 2,720 acres of pasture land was destroyed. The record also shows that in addition to the pasture land several hundred rods of fences were destroyed; also two calves and one cow. There is also testimony in the record which we have heretofore stated, that upon the premises within the burned area were a large number of trees suitable for firewood; that these trees were all burned. The testimony of different witnesses was to the effect that these trees would yield about 25,000 tiers of firewood of a value of between 50 and 60 cents per tier. The appellant in its summary of the damages shown by the testimony sets forth the following figures: "Pasturage, $2720.00; fences, $1000.00; stock, $125.00; total, $3845.00." No figures whatever are inserted showing the estimated damage or loss occasioned by the burning of the standing trees. The testimony as to the trees shows an amount which, added to the statement of the appellant, would largely exceed the actual damages allowed by the jury. It is also to be observed that the appellant does not include in its estimate of damages any of the testimony relative to the injury to the pasture land. The record contains evidence that the injury to the real estate was something over four dollars per acre; that the market value of the land preceding the fire was something over twelve dollars per acre, and that after the fire it was of the value of only eight dollars per acre. These figures, amply supported by the testimony, show that the jury was warranted in finding actual damages in the sum named in its verdict.

Appellant finally urges that the court erred in awarding treble damages, and in this particular cites a long list of cases having to do with punitive damages in cases where the defendant has been guilty of oppression, fraud or malice, as specified under section 2294 of the Civil Code. It would serve no useful purpose to take up and analyze the different cases cited by the appellant, and it is sufficient to say that none of them is based upon code provisions such as we have in the state of California. The cases relied upon by the appellant have to do only with ordinary tres-

passes where punitive damages are allowed when the trespass has been accompanied by malice, express or implied.

■■ Section 3346a of the Civil Code reads: "Every person negligently setting fire to his own woods, or negligently suffering any fire to extend beyond his own land, is liable to treble damages to the party injured." The same identical words appear in section 3344 of the Political Code. Consideration of these sections has been had by the Supreme Court of this state in the following cases: *Sampson* v. *Hughes*, 147 Cal. 62 [81 Pac. 292]; *Galvin* v. *Gualala Mill Co.*, 98 Cal. 268 [33 Pac. 93]; *Garnier* v. *Porter*, 90 Cal. 105 [27 Pac. 55]. The sections of the code quoted and the case cited, as well as the case of *Paiva* v. *California Door Co.*, *supra*, show that two questions are involved: First, negligently setting fire; second, negligently permitting the fire to escape and burning the property belonging to others. The cases also cited show that in the procedure awarding treble damages, all that is required is that certainty in the fixing of the damages be shown, that is, that the court may instruct the jury to ascertain the actual damages, to find the actual damages, and then treble the same, or may instruct the jury to find actual damages and then when the verdict of the jury is brought in fixing the actual damages, treble damages may be allowed by the court. In this case the verdict of the jury was for actual damages, and upon this finding of the jury as to actual damages, treble damages were allowed. Thus, absolute certainty in the procedure was obtained.

■■ The statute under consideration includes only the element of negligence, and when that is found justifies the imposition of treble damages. ■■ That such statutes are constitutional is supported by the overwhelming weight of authority. In *Eastman* v. *Jennings McRay Logging Co.*, 69 Or. 1 [Ann. Cas. 1916A, 185, 138 Pac. 216], the constitutionality of a similar act was considered and the act upheld. This case, as reported in Ann. Cas. 1916A, *supra*, is accompanied by an extended note quoting the cases upholding such statutes. The principle upon which such statutes are upheld is thus stated: "It is within the power of the legislature to impose on railroad companies an absolute liability for fire started by locomotives." (*St. Louis Ry. Co.* v. *Shore*, 89 Ark. 418 [117 S. W. 515] 16 Ann. Cas. 939, and

note; *Union Pacific Ry. Co.* v. *DeBusk,* 12 Colo. 294, 13 Am. St. Rep. 221, and note [3 L. R. A. 350, 20 Pac. 752].) ''And it has been held that the power extends to the imposition on such companies of liability for treble damages irrespective of negligence. *Jensen* v. *South Dakota Ry. Co.,* 25 S. D. 509 [Ann. Cas. 1912C, 700, 35 L. R. A. (N. S.) 1015, 127 N. W. 650]. The exercise of such a power is justified, however, only on the peculiar dangers of fire attendant on the operation of railroads. In the reported case it is held that a statute imposing on an individual an absolute liability for actual damages from a fire started accidentally or unavoidably, is invalid. The validity of a statute imposing a double or treble liability for damages resulting from the destruction of property by fire occurring through the negligence, wilfulness or malice of the person who kindles it, or allows it to get beyond his control, has uniformly been sustained'' (citing a long list of authorities). As will be observed by studying the note referred to, the statutes differ somewhat in phraseology, some of them making the allowance of double or treble damages depend upon either negligence, wilfulness or malice. None of them, however, requires the presence of all three of the elements just stated. Our statute includes only the element of negligence. See, also, the case of *Jensen* v. *South Dakota Ry. Co., supra,* and cases cited in an appended note. The danger from fires in a dry country like California is so great as to justify the police power of the state in imposing treble damages, and in no country is the necessity for greater care being exercised against the spread of fires than in the San Joaquin Valley during the summer months where conditions are always favorable for extensive conflagrations and the absence of moisture rendering the extinguishment of fires, when once started, so difficult. All of these considerations justify the exercise of the police power of the state in imposing damages, such as to insure the reasonable care and precautions necessary under the conditions so existing.

Finding no cause for reversal herein, the judgment of the trial court is affirmed.

Hart, Acting P. J., and Bartlett, J., *pro tem.,* concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 31, 1928.

All the Justices concurred.